THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR GOMEZ, Appellant. [859 NYS2d 621]—

Judgment, Supreme Court, New York County (Gregory Carro, J.), rendered December 13, 2005, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 3½ years, reversed, on the law, defendant's suppression motion granted, the plea vacated, and the indictment dismissed.

Defendant does not dispute that the police lawfully stopped his car, arrested him, and then impounded the car, after observing him driving erratically and determining, by a computer run, that his driver's license had been suspended. However, defendant does challenge the ensuing warrantless search of the car that yielded the narcotics evidence providing the basis for the criminal possession charge to which he pleaded guilty.[1] Supreme Court denied defendant's motion to suppress this evidence based

---

**1.** Such evidence included the following items found in the car's trunk at the scene of the arrest: a "Banana Republic" bag containing a clear plastic

on its finding that the People established at the suppression hearing that the evidence was recovered in the course of a valid inventory search. We now reverse.

An inventory search is "a search designed to properly catalogue the contents of the item searched" (*People v Johnson*, 1 NY3d 252, 256 [2003]). "The specific objectives of an inventory search, particularly in the context of a vehicle, are to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments" (*id.*, citing *Florida v Wells*, 495 US 1, 4 [1990]). To establish that evidence was recovered in the course of a valid inventory search of a vehicle, the People are required to offer proof that the search was "conducted pursuant to 'an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably' " (*Johnson*, 1 NY3d at 256, quoting *People v Galak*, 80 NY2d 715, 719 [1993]). In addition, the People are required to establish that the search actually produced "a meaningful inventory list" (*Johnson*, 1 NY3d at 256; *see also Galak*, 80 NY2d at 720 [an inventory search must "create a usable inventory"]).

In this case, the People failed to meet their initial burden of coming forward with evidence that the search of defendant's car was conducted in accordance with a standardized procedure established by the Police Department that was "rationally designed to meet the objectives that justify the search in the first place" and "limit[ed] the discretion of the officer in the field" so as to "assure[ ] that the searches are carried out consistently and reasonably and do not become little more than an excuse for general rummaging to discover incriminating evidence" (*Galak*, 80 NY2d at 719). While it was not necessarily fatal to the People's case that they did not place in evidence the Patrol Guide's written guidelines for conducting an inventory search, the People also failed to elicit from the police witness the relevant content of those guidelines. The only testimony the People elicited about the content of the Patrol Guide's inventory search procedure was that it permits such a search to be conducted either at the scene or at the precinct and that it provides that such a search should be conducted "of a vehicle that is going to be vouchered." No additional relevant details of

---

bag apparently filled with cocaine powder, an electric scale, and an empty, clear plastic bag apparently coated with cocaine residue, and (outside the "Banana Republic" bag) a brown manila envelope containing several red pills. In addition, after the car was driven to the precinct, 45 empty plastic "baggies" were found inside the panel of the driver's door.

the procedure for inventory searches were adduced. In particular, although the drugs in this case were found in the trunk of defendant's car, and other evidence was found inside a door panel, the People did not establish the circumstances that would justify opening a closed trunk or a door panel under the Patrol Guide procedure (*see People v Colon*, 202 AD2d 708, 708 [1994], *lv denied* 84 NY2d 824 [1994] [drugs found during inventory of vehicle "in a paper bag located in the trunk and hidden behind some of the vehicle's interior paneling" were suppressed due to failure to establish that trooper was "acting pursuant to any standardized procedure in conducting the inventory"]; *cf. People v Lesane*, 284 AD2d 249, 250 [2001] [locked metal compartment in vehicle was opened during inventory search in accordance with applicable procedure]; *People v Watson*, 213 AD2d 996, 997 [1995], *lv denied* 86 NY2d 804 [1995] [vehicle's door panel was opened during inventory search in accordance with applicable procedure]; *People v Walker*, 194 AD2d 92, 94 [1993], *lv denied* 83 NY2d 811 [1994] [vehicle's trunk was opened during inventory search in accordance with applicable procedure]).[2]

Since the People failed to establish the content of any standardized procedure for inventory searches promulgated by the New York City Police Department, it necessarily follows that the People also failed to come forward with evidence that the search of defendant's car was conducted in accordance with any such standardized procedure. Further, even if the People had established that the search was otherwise conducted in accordance with a reasonable standardized procedure for conducting inventory searches, suppression would still be required on the ground that the People completely failed to establish that the police created any actual inventory list of the items found in the car, such a list being "the hallmark of an inventory search" (*Johnson*, 1 NY3d at 256). While the police witness testified that a voucher and forfeiture papers were prepared for the car itself, there is no indication that such paperwork included any itemization of the car's contents. As to the officer's testimony that he prepared vouchers for the various items found in the

---

2. The police witness testified that the search of defendant's car was motivated in part by the officer's recollection that, during an encounter he had with defendant in an apartment the night before the arrest, defendant had claimed to have a gun. However, the officer never explained how defendant's claim the night before (which had not prompted any search at the time) affected the manner in which the inventory search of defendant's car could properly be conducted under the Patrol Guide's standards. The People have not argued that defendant's prior statement that he had a gun created probable cause for searching his car when he was arrested on an unrelated charge the next day.

car that were to be held for use as evidence, such disparate and selective documentation of the car's contents could not substitute for a single "meaningful inventory list" (*id.*; *see also Galak*, 80 NY2d at 720 [the requirement of "a detailed and carefully recorded inventory" was not satisfied where, inter alia, "no record was kept of what property, if any, was left in the car or returned to defendant"]). The People did not place in evidence any comprehensive inventory list "catalogu[ing] the contents of the [vehicle] searched" (*Johnson*, 1 NY3d at 256) and noting the disposition of each item found therein, whether or not that item was retained by the police. Further, not only did the police witness not testify that any such list had been created, he affirmatively testified that he believed that no official form for inventory lists had been promulgated:

"Q. But there is a special form when you do an inventory search of what was in the vehicle, what was recovered from the vehicle, if it was brought somewhere for safekeeping, correct?

"A. No, there is not.

"Q. There's no form at all?

"A. No."[3]

We observe that, if vouchers for items held as evidence were deemed to constitute, collectively, an inventory list of the contents of the vehicle from which those items were recovered, the requirement that an inventory search produce an inventory list would be eviscerated, since the police create vouchers, as a matter of course, for items being retained for use as evidence. Moreover, to the extent the police document only those contents of a vehicle that have potential evidentiary value (as appears to have been the case here), it tends to show that the purpose of the search of the vehicle was "a general rummaging in order to discover incriminating evidence" (*Johnson*, 1 NY3d at 256, quoting *Florida v Wells*, 495 US at 4), which is not an appropriate aim of an inventory search. "While incriminating evidence may be a consequence of an inventory search, it should not be its purpose" (*Johnson*, 1 NY3d at 256).[4]

---

3. In their brief, the People concede that, contrary to the officer's testimony, "[p]olice officers operating under the Patrol Guide are directed to voucher valuables recovered in an inventory search on a Property Clerk's Invoice (Document Number PD521-141)," as set forth in Patrol Guide Procedure No. 218-13 ("Inventory Searches of Automobiles and Other Property"). The People do not argue that the voucher that was filled out for the evidence found in defendant's car constituted the functional equivalent of PD521-141, the inventory form prescribed by Procedure No. 218-13.

4. The dissent's remark that the People showed "that all of the items of *contraband* were recorded in the voucher" (emphasis added) underscores the

Contrary to the view of the dissent, defendant preserved both the issue of the People's failure to establish that the search of the vehicle was conducted in accordance with an established procedure for inventory searches and the issue of the failure of any meaningful inventory list to result from the search of the vehicle. Indeed, the People—who are not reticent to argue that arguments have not been preserved for appellate review—do not argue that defendant failed to preserve the arguments he makes on this appeal. The following excerpts from defense counsel's argument at the *Mapp* hearing demonstrate the preservation of these issues:

"[The cases] all say, if there is going to be an inventory search, certain safeguards and certain procedures have to be followed. There needs to be a form that's filled out. And although the officer denied there is a form, there actually is one, and I have the form number here, somewhere. I have it listed somewhere. But there is a form that has to be filled out. This officer said he never filled out an inventory search form.

"And the reason they have to have procedures is, the cases say this can't be some sort of rouse [*sic*] to search a vehicle, if you have no other reason to search the vehicle. This officer testified that on an arrest for driving with a suspended license, with the car double-parked, with one car, one door unable to be opened, where he couldn't even do an entire inventory search, he had to bring the car to the precinct to open up the [panel of the] door, where the glassine envelopes [*sic*] were allegedly found, with two other police officers there. It was unknown whether cars could pass, because he said he didn't remember.

"You are going to stop everything at 1 o'clock in the morning, and stop [*sic*] doing an inventory search, and you don't have a form writing down what you are taking, why you are taking it, what you are keeping for safekeeping? The Courts are very clear, and the Court of Appeals, I believe, unanimously in [*People v Johnson, supra*] said that—I am going to quote from the Court of Appeals, Judge.

"They [the Court of Appeals] said [counsel here read from *Johnson*, 1 NY3d at 256] that 'an inventory search must not be

---

point that the purpose of the search of defendant's car was to discover incriminating evidence, not to produce a general inventory of all of the vehicle's contents. Moreover, we do not share the dissent's view that it is a "more reasonable inference" from the officer's testimony that he "recorded all of the items found in the vehicle." In this regard, we reiterate that it was the People's initial burden to come forward with affirmative evidence that an inventory list was, in fact, created.

a rouse [*sic*; Court of Appeals wrote "ruse"] for general rummaging in order to discover incriminating evidence. To guard against this danger [an] inventory search [sh]ould be conducted pursuant to [an] established procedure, clearly limiting the conduct of individual officers. That assures that the searches are carried out consistently and reasonably. The procedure must be standardized, so as to limit the discretion of the officer in the field. While inventory [*sic*; Court of Appeals wrote "incriminating"] evidence may be [a] consequence of [an] inventory search, it should not be its purpose, and the prosecution has the initial burden of establishing a valid inventory search.' [Here the inexact reading from *Johnson* ends.]

"It is the prosecution's burden to prove that this was a valid inventory search. I think the officer's testimony after arresting someone for driving with a suspended license, that he was going to just start an inventory search, without having the form to fill out, right in the middle of the street, at 1 o'clock in the morning, is ludicrous.

"I submit to the Court that what this officer was doing was attempting to search the car, perhaps because the defendant, the day before, was taken to a hospital, maybe suspected there may have been drugs in the car. He was trying to find a reason to search that car, and that is what he was doing. Whether or not he thought of that reason afterwards, because he realized that you can't search a car when you stop somebody and arrest someone for driving with a suspended license unless you have probable cause to believe there is contraband, I don't know when he decided that. But at some point, he thought up this rouse [*sic*].

"Well, this was [not] an inventory search. It is obvious what this is. This is very similar to the *Johnson* case, where the officer went into a glove compartment to look, and he said, to inventory the car at the scene, and a gun was recovered. And the Court of Appeals unanimously held that you can't do that. An inventory search has to be a standardized procedure.

"If this vehicle had been brought back and if they had a search of the vehicle, and if they have a form listing what they were taking out, it would be a different story. That is not what happened here, Judge. So based upon the evidence, and based upon the leading cases in this state, I am going to ask the Court to suppress all of the evidence that was removed from the vehicle. There was absolutely no probable cause to search this vehi-

cle, and this was obviously not an inventory search, it was just rouse [*sic*] by the officer to justify searching the vehicle."[5]

In sum, because the People failed to establish that the Police Department's inventory search procedure was reasonable and that the search of defendant's car was conducted in accordance with that procedure and produced a legitimate inventory list, defendant was entitled to have the evidence produced by that search suppressed. We note that the People did not raise an argument of inevitable discovery in opposition to the suppression motion, and we therefore have no occasion to consider such a theory. Concur—Mazzarelli, J.P., Friedman, Williams and Malone, JJ.

McGuire, J., dissents in a memorandum as follows: I respectfully dissent. All of the claims advanced by defendant on appeal in support of his contention that the motion to suppress should have been granted are unpreserved. The interest of justice does not support reviewing these claims; it requires, to the contrary, that we not review them and affirm the judgment in all respects.

The sole witness at the suppression hearing was Police Officer Vetell. With respect to the inventory search of defendant's car that followed his arrest for driving with a suspended license, Officer Vetell testified that the car had to be "vouchered for safekeeping" and that he vouchered the car because it had to be inventoried according to the standard procedures for the New York City Police Department. Vetell also testified that the Patrol Guide "la[id] out procedures for an inventory search" and that he was familiar with those procedures.

As Vetell explained, the car was vouchered for safekeeping "[b]ecause it was in an illegal parking space, defendant was, obviously, not allowed to drive it, and I was not going to take responsibility and park it in the street. Procedurally, we were going to bring it back to the precinct and safeguard the vehicle until the defendant got out." One purpose of the inventory search was to make sure there were no valuables in the car. As Vetell also testified, a police officer was going to have to drive the car to the precinct and the officers "were going to make sure there was no weapon in the vehicle." The officers were go-

---

**5.** Even if we were to accept (which we do not) the dissent's position that defendant did not preserve the issue of the People's failure to show that the arresting officer followed an established procedure for inventory searches (although, to reiterate, the People have made no such argument), the above-quoted portions of the hearing transcript establish to our satisfaction that, contrary to the dissent's view, defendant preserved the issue of the People's failure to produce any actual inventory list that resulted from the search of the vehicle. The latter issue, by itself, suffices to require a reversal.

ing to make sure there was no weapon because defendant had threatened Vetell the day before, stating that he had a gun and was going to kill him. Thus, there were two reasons for the search of the vehicle: because it was being taken to the precinct and vouchered and because of the threat.

The inventory search began at the scene of arrest, but was hampered because one of the doors was blocked due to the way the car was double parked. At the scene, however, one of Officer Vetell's fellow officers removed a white bag from the trunk. Inside the bag was a clear plastic bag of powdered cocaine, an electric scale and another clear plastic bag containing cocaine residue. A brown manila envelope with several red pills inside also was found in and removed from the trunk.

After the drugs were found in the trunk, a group of people was gathering on the sidewalk and Vetell's sergeant directed that the inventory search be completed at the precinct. Under the Patrol Guide, an officer may perform an inventory search either at the scene of arrest or at the precinct. The search was completed at the precinct. The sergeant at some point discovered "45 empty baggies" in the door panel of the driver's door. Officer Vetell prepared both a voucher form relating to the car and "forfeiture paper[work]." Asked on direct examination what he did with the 45 plastic baggies, Officer Vetell answered: "[t]hey were vouchered." When he was next asked what he did with the white bag containing the cocaine, the scale, the empty bag with the residue and the red pills, Officer Vetell stated: "[t]hose were vouchered, as well." Asked by defense counsel on cross-examination if he "fill[ed] out any form about doing an inventory search on what was found in the vehicle," Officer Vetell answered: "[t]he voucher." When counsel went on to ask if there was a "special form when you do an inventory search of what was . . . recovered from the car," Vetell responded: "[n]o, there is not."

None of the foregoing testimony from Officer Vetell was contradicted at the hearing. The suppression court found Officer Vetell to be credible, made findings of fact that were consistent with the testimony in every relevant respect and upheld the reasonableness of the inventory search.

The majority reverses, grants the motion to suppress and dismisses the indictment because: (1) "the People . . . failed to elicit from the police witness the relevant content of [the Patrol Guide's written guidelines for conducting an inventory search]," (2) "the People did not establish the circumstances that would justify opening a closed trunk or a door panel under the Patrol Guide procedure" and (3) "the People completely failed to es-

tablish that the police created any actual inventory list of the items found in the car."

Not a single one of these grounds for suppression was raised at the hearing. As discussed below, defendant placed his eggs in a very different basket. Rather than advance specific arguments that the People could meet with additional evidence, defendant attacked the veracity of Officer Vetell, arguing that the asserted basis for searching the vehicle, an inventory search, was just a pretext. Accordingly, all of these grounds (and each of the arguments defendant raises on appeal) are unpreserved and, as is also discussed below, should not be relied upon now for the first time when the People are unable to counter them with evidence.

Before focusing on the arguments advanced by defendant at the hearing, another flaw in the majority's position should be noted. With respect to the last of the three grounds for reversal it posits, the majority elaborates on it in three respects. The first two are: (a) although Officer Vetell "testified that a voucher and forfeiture papers were prepared for the car itself, there is no indication that such paperwork included any itemization of the car's contents"; and (b) "[t]he People did not place in evidence any comprehensive inventory list cataloguing the contents of the vehicle searched and noting the disposition of each item found therein, whether or not that item was retained by the police" (internal quotation marks, citation and brackets omitted). The third elaboration is less easily stated. In essence, however, the majority appears to be of the view that the "voucher" that Officer Vetell testified he prepared was defective because incomplete. Thus, the majority first notes that "the police create vouchers, as a matter of course, for items being retained for use as evidence." The majority then goes on to argue that "to the extent the police document only those contents of a vehicle that have potential evidentiary value (*as appears to have been the case here*), it tends to show" that the search was conducted for an improper purpose (emphasis added).

Again, however, defendant did not make a single one of these arguments in urging that the motion to suppress should be granted. That is, defendant never objected on any of the following grounds: the paperwork did not "include[ ] any itemization of the car's contents"; "[t]he People did not place in evidence any comprehensive inventory list"; the voucher or other paperwork "document[ed] only those contents . . . that ha[d] potential evidentiary value." The majority's assertion that it "appears to have been the case here" that Officer Vetell documented only items found in the car with "potential eviden-

tiary value" is unexplained and appears to rest on an unwarranted inference. Officer Vetell testified in response to specific questions about specific items found in the car (the drugs, the scale and the baggies) that he vouchered them. From this, the majority apparently but illogically concludes that Officer Vetell noted *only* these items on the voucher relating to the case, even though he certainly never testified that he included only these items on the voucher.[1] The opposite and more reasonable inference is suggested by the only other testimony on point. As noted, defense counsel asked the officer if he "fill[ed] out any form about doing an inventory search on *what was found in the vehicle*" and if there was "a special form when you do an inventory search of what was . . . *recovered from the vehicle*" (emphasis added). The italicized language in both these questions is unqualified and neither the questions nor the answers (which were, respectively, "[t]he voucher" and "[n]o, there is not") suggest that the voucher Officer Vetell filled out was limited to items of potential evidentiary value.

Indeed, defendant never offered any argument that the motion to suppress should be granted on account of the contents of the voucher.[2] Rather, the only protest counsel registered that bears at all on this subject was that Officer Vetell should have filled out some particular form other than the voucher. Apart from the fact that this protest does not entail or suggest any objection to the content of the voucher, it is beside the point for another reason. There was *no* testimony at the hearing that supported counsel's unsworn assertion during oral argument that such a form exists and that it must be filled out.[3]

**1.** The majority makes precisely this logical error in the first sentence of its footnote 4. To reiterate: from the indisputable fact that at the very least the voucher recorded all the items of contraband, it cannot sensibly be maintained that the voucher recorded only the items of contraband.

**2.** At the hearing, the People of course were obligated to provide the defense with the paperwork prepared by Officer Vetell (CPL 240.44 [1]). Defense counsel never protested that he had not been provided with the voucher.

**3.** Defendant's appellate counsel unsuccessfully attempts to support trial counsel's claim by expanding the record. Counsel asserts that "the New York City Police Department Patrol Guide states that when conducting an inventory search of an automobile, the officers should 'remove all valuables from the vehicle and voucher on a separate PROPERTY CLERK'S INVOICE (PD521-141).' Barry Kamins, *New York Police Department Patrol Guide*, 1175 (2005)." Thus, appellate counsel simply assumes that the voucher described by Officer Vetell is not such an invoice. Ironically, moreover, the very procedure from which counsel quotes (Procedure No. 218-13), articulates the guidelines for conducting an inventory search and sets forth the circumstances relating to opening and searching a trunk, container and other areas

Although the majority quotes at some length from defense counsel's arguments in support of the motion to suppress, those arguments should be quoted in full. Counsel argued as follows:

"The People are going to argue, or I assume they are going to argue because the officer has stated the three basic reasons for searching the vehicle and recovering the contraband in this case. The first one was a search, incident to a lawful arrest. But I would submit to the Court that the cases are very clear, the leading cases being *People v Belton* and *People v Langen*, Court of Appeals cases, that there has to be a nexus between the search and arrest, probable cause for the contraband in the vehicle.

"In this case there was merely an arrest for a VTL misdemeanor, driver's suspended license. There was absolutely no reason at all for this officer to believe there was contraband in the vehicle.

"He gave a second reason for the search that is tied with this, and that is, the day before when the defendant, who obviously was having some psychiatric problems, was taken to the hospital and threatened to hurt himself and threatened to kill the officer. So the officer testified that, well, I wanted to see if there was a gun in the vehicle.

"The Court heard the condition that the defendant was in. He had no shirt on, he locked himself in a room. Obviously, this was somebody who was having a lot of problems. He never said 'I have a gun, I am going to shoot you.'[4] The officer never asked the mother if he had a gun, never had a search warrant to search the house, or any of that.

"All of a sudden he gives that as a reason as to why he wanted to search the car. I ask the Court to reach the conclusion that that is just ludicrous. The officer is just trying to find any reason to justify the search. There is no reason to believe this defendant ever had a gun.

"Just because he was taken to the hospital and screamed out 'I am going to kill you,' and 'I am going to hurt myself,' that is ridiculous. He never said 'I have a gun in the car' or 'I have a gun in the trunk.'

"So I submit to the Court, knowing that those two justifica-

---

within a vehicle. Suffice it to say, Procedure No. 218-13 is fully consistent with Officer Vetell's testimony and with the manner in which the search was conducted. It cannot be that this Court can take judicial notice only of language in the procedure that counsel regards as helpful to defendant.

4.   Counsel was wrong. Although the validity of the search hardly turns on it, Officer Vetell unequivocally testified that defendant had stated the previous day that he, defendant, had a gun and was going to kill the officer.

tions for searching the car aren't going to work, the officer tried using the rouse [sic] of, well, this is an inventory search.

"I submit to the Court, it was just a rouse [sic], and the cases are clear. I have a number of them. I don't know if the Court has the same as I do. *People versus Johnson*, which is the leading case. Actually, Mr. Arnold Levine is sitting right here, and he was the one who argued that case in front of Judge Atlas.

"*People versus Atlas*, which is a second department case, that cites *Johnson. People versus Russell*, which is another second department case. *People versus Galak*, another Court of Appeals case.

"They all say, if there is going to be an inventory search, certain safeguards and certain procedures have to be followed. There needs to be a form that's filled out. And although the officer denied there is a form, there actually is one, and I have the form number here, somewhere. I have it listed somewhere. But there is a form that has to be filled out.[5] This officer said he never filled out an inventory search form.

"And the reason they have to have procedures is, the cases say this can't be some sort of rouse [sic] to search a vehicle, if you have no other reason to search the vehicle. This officer testified that on an arrest for driving with a suspended license, with the car double-parked, with one car, one door unable to be opened, where he couldn't even do an entire inventory search, he had to bring the car to the precinct to open up the door, where the glassine envelopes were allegedly found, with two other police officers there. It was unknown whether cars could pass, because he said he didn't remember.

"You are going to stop everything at 1 o'clock in the morning, and stop doing an inventory search, and you don't have a form writing down what you are taking, why you are taking it, what you are keeping for safekeeping? The Courts are very clear, and the Court of Appeals, I believe, unanimously in *Johnson* said that—I am going to quote from the Court of Appeals, Judge.

"They said that an 'inventory search must not be a rouse [sic] for general rummaging in order to discover incriminating evidence. To guard against this danger [an] inventory search [sh]ould be conducted pursuant to [an] established procedure, clearly limiting the conduct of individual officers. That assures

---

**5.** As noted, there was no evidentiary support for this assertion by counsel that some form other than a voucher had to be filled out. In any event, as also noted, this protest cannot be equated with any objection relating to the contents of or any other inadequacy regarding the voucher that the officer unquestionably did fill out.

that the searches are carried out consistently and reasonably. The procedure must be standardized, so as to limit the discretion of the officer in the field. While inventory [sic] evidence may be [a] consequence of [an] inventory search, it should not be its purpose, and the prosecution has the initial burden of establishing a valid inventory search.'

"It is the prosecution's burden to prove that this was a valid inventory search.[6] I think the officer's testimony after arresting someone for driving with a suspended license, that he was going to just start an inventory search, without having the form to fill out, right in the middle of the street, at 1 o'clock in the morning, is ludicrous.

"I submit to the Court that what this officer was doing was attempting to search the car, perhaps because the defendant, the day before, was taken to a hospital, maybe suspected there may have been drugs in the car. He was trying to find a reason to search that car, and that is what he was doing. Whether or not he thought of that reason afterwards, because he realized that you can't search a car when you stop somebody and arrest someone for driving with a suspended license unless you have probable cause to believe there is contraband, I don't know when he decided that. But at some point, he thought up this rouse [sic].

"Well, this was [not] an inventory search. It is obvious what this is. This is very similar to the *Johnson* case, where the officer went into a glove compartment to look, and he said, to inventory the car at the scene, and a gun was recovered. And the Court of Appeals unanimously held that you can't do that. An inventory search has to be a standardized procedure.

"If this vehicle had been brought back, and if they had a search of the vehicle, and if they have a form listing what they were taking out, it would be a different story. That is not what happened here, Judge. So based upon the evidence, and based upon the leading cases in this state, I am going to ask the Court to suppress all of the evidence that was removed from the vehicle. There was absolutely no probable cause to search this vehicle, and this was obviously not an inventory search, it was just a rouse [sic] by the officer to justify searching the vehicle."

After the prosecutor argued in opposition to the motion to suppress, counsel offered the following in reply:

---

**6.** Of course, as the quotation from *Johnson* indicates, the People bore only the initial burden of going forward with evidence that the inventory search was lawful. The ultimate burden of persuasion was on defendant to show that the search was unlawful (*People v Di Stefano*, 38 NY2d 640, 652 [1976]).

"Your Honor, may I briefly, very briefly, talk about the Prosecutions [*sic*] cases that she mentioned?

"*Dickens, Middleton, Solo, Cammick,* all involve a car that was going to be towed by private towing companies, so the officer had to inventory the car first, because some private company was going to have it.

"As far as *Salazar,* the Court makes a point to say that the inventory form was filled out, which was not done here. And *Gonzales* involves a brown bag, suspended from a wire from under the dashboard that the defendant was trying to secrete, and the Court held that because of the unusual location, the manner in which it was affixed, and the effort to conceal it, the police reasonably concluded that the bag, requiring items of discovery, of inventory, that there might be a danger there. It was so unusual.

"Nothing like that happened here. There was nothing unusual in this vehicle until there was a full blown search of the vehicle at the scene."

As is evident, in urging suppression, counsel attacked the credibility and motivations of Officer Vetell, characterizing his testimony that the search at 1:00 A.M. was an inventory search as "ludicrous." Counsel's constant and unvarying contention was that the officer's testimony that the search was an inventory search was a ruse. Although counsel expressed some uncertainty about whether the testimony that the search was an inventory search was an after-the-fact or before-the-fact invention, he expressly argued no less than three times that this testimony was a ruse and twice argued in the same vein that the officer was "just trying to find any reason to justify the search" and he "was trying to find a reason to search that car."

The linchpin in counsel's argument was the specific form that counsel insisted, without any support in the evidence, was required to be filled out. Thus, counsel asserted that such a form "has to be filled out" and misleadingly argued that the officer "said he never filled out an inventory search form." Counsel went on to scoff at "the officer's testimony . . . that he was going to just start an inventory search, without having the form to fill out, right in the middle of the street, at 1 o'clock in the morning," deriding that testimony as "ludicrous." To reiterate, moreover, counsel never argued either that Officer Vetell had failed to record on the voucher all of the items found in the car or that the motion to suppress should be granted because the People did not introduce the voucher into evidence. Rather, counsel was arguing that if the search had been an inventory search, the officer would have filled out the particular form the existence of which counsel insisted upon.

The specific grounds upon which the majority relies are glaringly absent from counsel's argument. But another specific aspect of counsel's argument, one based on both the ostensible existence of the form and the location of the search, should be underscored, for it makes clear beyond any doubt that counsel's argument had nothing remotely to do with two of the three specific grounds upon which the majority relies. That is, as counsel was summarizing his argument, he stated: "If this vehicle had been brought back, and if they had a search of the vehicle, and if they [had] a form listing what they were taking out,[7] *it would be a different story*" (emphasis added). If counsel had been arguing that the motion to suppress should be granted either because the relevant content of the Patrol Guide's written guidelines had not been elicited at all or in sufficient detail or because the procedures under the Patrol Guide relating to opening a closed trunk or a door panel were not elicited, counsel could not have made this concession.

Because defendant "did not raise th[e]se specific arguments before the hearing court" they are unpreserved (*People v Cherry*, 302 AD2d 472 [2003], *lv denied* 100 NY2d 537 [2003]; *see* CPL 470.05 [2]). Moreover, they are unpreserved for a reason going to the heart of the requirement of a timely and specific objection. By not raising these arguments at the hearing, defendant deprived the People of an opportunity to meet them with evidence (*see People v Luperon*, 85 NY2d 71, 78 [1995] [preservation rules "require, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error"]; *People v Tutt*, 38 NY2d 1011, 1013 [1976] ["(w)here . . . the defendant fails at the suppression hearing to challenge a narrow aspect of the sufficiency of the admonitions given him, at a time when the People would have

---

7. Only the article "a" rather than "the" in this clause provides superficial support for the majority's contention that "defendant preserved the issue of the People's failure to produce any actual inventory list that resulted from the search of the vehicle." In context, however, it is clear that counsel was once again stressing the absence of *the* particular form that he asserted was required. Indeed, in his reply to the prosecutor's arguments, counsel once again referred to "the inventory form" that supposedly existed. Moreover, during her argument, the prosecutor contended that forfeiture paperwork for the car was prepared and that "paperwork, as well as the voucher for the vehicle, as well as all property recovered was, in fact, documented and vouchered as evidence in this case." For these reasons, this lone reference to "a" form hardly was sufficient to alert the hearing court to defendant's current claim that Officer Vetell did not fill out a "meaningful inventory list" (*see People v Goode*, 87 NY2d 1045, 1047 [1996]).

an evidentiary opportunity to counter his assertion, he may not then be heard to complain on appeal"]). As the majority correctly notes, the People do not contend in their brief that defendant failed to preserve for review the arguments he raises on appeal. That failure is startling but irrelevant. After all, even if the People had conceded that the arguments were preserved, that concession would not be binding on us (*cf. People v Berrios*, 28 NY2d 361, 366-367 [1971]) and would not "relieve us from the performance of our judicial function" (*id.* at 366) of determining whether defendant has preserved an issue of law for review.

Even if defendant had preserved for review the contention that the People did not fill out a "meaningful inventory list," we should affirm the conviction just the same. To be sure, in the course of holding in *People v Johnson* (1 NY3d 252, 256 [2003]) that the evidence was insufficient "to satisfy the prosecutor's initial burden of establishing a valid inventory search," the Court of Appeals stated that the officer "did not fill out the hallmark of an inventory search: a meaningful inventory list." But here the evidence established beyond cavil that all of the items of contraband were recorded in the voucher. In addition, as argued above, the more reasonable inference from the testimony on cross-examination is that the voucher prepared by Officer Vetell recorded all of the items found in the vehicle. Accordingly, the People met their initial burden and defendant failed to meet his ultimate burden of persuasion on the issue of whether a "meaningful inventory list" was prepared (*see People v DiStefano*, 38 NY2d at 652 ["(i)t is the accused, not the People, who must shoulder the burden of persuasion on a motion to suppress evidence"]).

The majority correctly notes that in their brief the People state that "[p]olice officers operating under the Patrol Guide are directed to voucher valuables recovered in an inventory search on a Property Clerk's Invoice (Document Number PD521-141)." In finding the People thus to have made a "conce[ssion]," however, the majority fails to quote the preceding sentence: "Vetell testified that no 'special form' is used in an inventory search." The majority simply assumes without any support whatsoever in the hearing evidence that there is some difference between the voucher that Officer Vetell filled out and "Document Number PD521-141." The majority immediately goes on to state that "[t]he People do not argue that the voucher that was filled out for the evidence found in defendant's car constituted the functional equivalent of PD521-141, the inventory form prescribed by Procedure No. 218-13." This statement

is sheer sophistry as it is true only in the sense that the People do not use the phrase "functional equivalent" in their brief. The People's argument is that all of the items found in the vehicle were listed in the voucher. Even assuming that Officer Vetell blundered with regard to the number or title of the form he was required to fill out, it surely would be absurd to invalidate the search in this case if the voucher did record all of the items found in the vehicle.

Finally, as to the merits generally, the People—in addition to relying on Officer Vetell's testimony relating to the voucher—note that Vetell testified that the Patrol Guide lays out procedures for an inventory search, that he was familiar with those procedures and that the Patrol Guide permits an inventory search either at the scene or at the precinct, and explained the reasons why the vehicle was being held for safekeeping and an inventory search was conducted. Moreover, he was asked the following compound question: "Is it standard procedure for the New York City Police Department to inventory a vehicle that is going to be ultimately, be vouchered for safekeeping, at the scene, or at the precinct, or both?" In responding, "[y]ou can do either/or," Officer Vetell did not expressly state that it was standard procedure to conduct an inventory search of a vehicle that was vouchered for safekeeping. But that is a fair inference from all of his testimony. The People also correctly argue that the existence of a valid inventory search procedure can be proven by testimony and that they were not required to introduce into evidence the actual provisions of the Patrol Guide (*see United States v Thompson*, 29 F3d 62, 65 [2d Cir 1994]; *cf. People v Di Stefano*, 38 NY2d at 652 ["no reason is offered, as indeed there cannot be, why testimonial evidence alone is inadequate to sustain the prosecution burden (of going forward)"]). My point is that it is far from obvious that the People did not meet their initial burden of going forward and that defendant did meet his ultimate burden of establishing the invalidity of the search. Given my view that defendant's appellate challenges to the inventory search are unpreserved, I need not and do not decide these issues.