[992 NE2d 414, 970 NYS2d 486]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEN-
NETH PADILLA, Appellant.

Argued May 2, 2013; decided June 6, 2013

**POINTS OF COUNSEL**

*Randall D. Unger*, Bayside, for appellant. I. The People failed to establish that the police conducted a valid inventory search of appellant's vehicle. The firearm seized during that search should therefore have been suppressed. (*Katz v United States*, 389 US 347; *United States v Jeffers*, 342 US 48; *People v Sullivan*, 29 NY2d 69; *People v Johnson*, 254 AD2d 500; *Colorado v Bertine*, 479 US 367; *Florida v Wells*, 495 US 1; *People v Galak*, 80 NY2d 715; *People v Miles*, 3 Misc 3d 566; *United States v Duguay*, 93 F3d 346; *People v Schwing*, 13 AD3d 725.) II. The People failed to prove appellant's guilt beyond a reasonable doubt. (*Jackson v Virginia*, 443 US 307; *People v Contes*, 60

NY2d 620; *People v Lemmons*, 40 NY2d 505; *People v Rivera*, 77 AD2d 538; *County Court of Ulster Cty. v Allen*, 442 US 140; *People v Ballard*, 133 Misc 2d 584; *People v Hicks*, 138 AD2d 519, 71 NY2d 969; *People v Wilt*, 105 AD2d 1089; *People v Olivo*, 120 AD2d 466; *People v Brown*, 181 AD2d 1041.) III. Appellant was deprived of his due process right to a fair trial by the numerous, egregious improprieties committed by the trial prosecutor. (*People v Steinhardt*, 9 NY2d 267; *Berger v United States*, 295 US 78; *People v Moye*, 12 NY3d 743; *People v Lovello*, 1 NY2d 436; *People v Bailey*, 58 NY2d 272; *People v Diaz*, 170 AD2d 202; *People v Butler*, 185 AD2d 141; *People v Paperno*, 54 NY2d 294; *People v Webb*, 68 AD2d 331; *People v Posner*, 273 NY 184.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Matthew T. Murphy* and *Christopher P. Marinelli* of counsel), for respondent. I. The hearing court properly denied defendant's motion to suppress the gun. (*Coolidge v New Hampshire*, 403 US 443; *People v Spinelli*, 35 NY2d 77; *Colorado v Bertine*, 479 US 367; *People v Grear*, 232 AD2d 578; *People v Johnson*, 1 NY3d 252; *People v Sullivan*, 29 NY2d 69; *United States v James Daniel Good Real Property*, 510 US 43; *County of Nassau v Canavan*, 1 NY3d 134; *Krimstock v Kelly*, 306 F3d 40; *People v Galak*, 80 NY2d 715.) II. The People proved all elements of defendant's crime beyond a reasonable doubt. (*People v Bleakley*, 69 NY2d 490; *People v Tejeda*, 73 NY2d 958; *People v Kennedy*, 47 NY2d 196; *People v Romero*, 7 NY3d 633; *People v Gaimari*, 176 NY 84; *People v Saunders*, 85 NY2d 339; *People v Manini*, 79 NY2d 561; *People v Muhammad*, 16 NY3d 184; *People v Lemmons*, 40 NY2d 505; *People v Verez*, 83 NY2d 921.) III. Nothing in the People's summation or redirect examination of Officer Christopher White was improper. (*People v Harris*, 98 NY2d 452; *People v Charleston*, 56 NY2d 886; *People v Balls*, 69 NY2d 641; *People v Tonge*, 93 NY2d 838; *People v Kello*, 96 NY2d 740; *People v Santiago*, 52 NY2d 865; *People v Halm*, 81 NY2d 819; *People v Galloway*, 54 NY2d 396; *People v Seit*, 86 NY2d 92; *People v Smith*, 82 NY2d 731.)

## OPINION OF THE COURT

PIGOTT, J.

The issue on this appeal is whether the People met their burden of establishing a valid inventory search of defendant's vehicle. We hold that they did.

On June 7, 2008, defendant was arrested for operating a motor vehicle while under the influence of alcohol. Pursuant to police

protocol, defendant and his vehicle were taken to the police precinct. An officer conducted an inventory search of the vehicle, during which he recovered a loaded .357 Magnum revolver and ammunition. Defendant was charged with criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) in addition to operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [3]).

Prior to trial, defendant moved to suppress the weapon as a result of an illegal search. At the suppression hearing, the officer who conducted the inventory testified at length. He explained that it was custom and procedure for the police to impound a vehicle if the person arrested for driving while under the influence of alcohol is the registered owner. The officer, who had done "several, dozens" of inventory searches, testified that the purpose of the search was to inventory "everything" before the vehicle was taken to the impound lot.

Prior to completing the inventory, defendant's sister, a police officer, arrived at the precinct and the officer released some of the items from defendant's vehicle to her at her request. The officer recorded this in his memo book without specifically identifying each item. Defendant's sister then signed the memo book. The officer admitted at the hearing that no authority exists for an officer to remove property from a vehicle and give it to a family member, but explained that it was customary for him, and the New York City police in general, to give family members property, as a courtesy, in similar circumstances.

A copy of the relevant pages of the New York City Police Department's Patrol Guide was entered into evidence at the hearing. The officer explained that, pursuant to this procedure, the property recovered during the search that remained at the precinct was listed on a property voucher or in his memo book.

The officer then testified that, while searching the back seat, he noticed that panels were askew. He admitted that he looked into the panels because he was "looking for evidence of narcotics in a place where [he knew] criminals hid[ ] narcotics." Nothing was found. When the officer opened the trunk, he found that audio speakers and an amplifier filled the entire cargo area, and he retrieved a screwdriver to remove the equipment. He testified that because the speakers were not "factory-issued" the vehicle would not be accepted at the impound facility unless they were removed. After removing the equipment, he checked the spare tire compartment where he found a black leather bag containing the gun and ammunition.

Supreme Court, finding the search to be valid, denied defendant's motion to suppress (25 Misc 3d 1228[A], 2009 NY Slip Op 52332[U] [Sup Ct, NY County 2009]). Defendant was thereafter convicted, after a jury trial, of criminal possession in the second degree and sentence was imposed. The Appellate Division affirmed (89 AD3d 505 [1st Dept 2011]). A Judge of this Court granted defendant leave to appeal (19 NY3d 965 [2012]).

Defendant argues that the manner in which the officer conducted his inventory search was not proper and thus the entire search was invalid. He contends that the purpose of the search was not only to inventory its contents, but to search for contraband. He also claims that because the officer did not follow all the written standard procedures for conducting the inventory search, the entire search was illegal. We disagree.

Our jurisprudence in this area is clear. Following a lawful arrest of a driver of a vehicle that is required to be impounded, the police may conduct an inventory search of the vehicle. The search is "designed to properly catalogue the contents of the item searched" (*People v Johnson*, 1 NY3d 252, 256 [2003]). However, an inventory search must not be "a ruse for a general rummaging in order to discover incriminating evidence" (*id.*). To guard against this danger, the search must be conducted pursuant to an established procedure "clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably" (*id.*, citing *People v Galak*, 80 NY2d 715, 719 [1993]). "While incriminating evidence may be a consequence of an inventory search, it should not be its purpose" (*Johnson*, 1 NY3d at 256). The People bear the burden of demonstrating the validity of the inventory search (*see People v Gomez*, 13 NY3d 6, 11 [2009]).

Here the People proffered written guidelines, the officer's testimony regarding his search of the vehicle, and the resulting list of items retained. Although defendant takes issue with the officer's removal of the speakers by arguing that such action was a ruse designed to search for drugs, the officer's testimony that it was police protocol to remove any owner-installed equipment, was accepted by the hearing court and we perceive no grounds upon which to overturn that determination. Thus, the People met their burden of establishing that the search was in accordance with procedure and resulted in a meaningful inventory list.

The fact that the officer did not follow the written police procedure when he gave some of the contents of the vehicle to

defendant's sister without itemizing that property, did not invalidate the search. Notably, it was defendant himself who called his sister to come to the precinct to retrieve his property. The primary objectives of the search—to preserve the property of defendant, to protect the police from a claim of lost property and to protect the police and others from dangerous instruments—were met when the officer complied with defendant's request and gave the items to his sister and then prepared a list of the other items retained by the police.

■ Finally, it is clear the officer's intention for the search was to inventory the items in the vehicle. It was reasonable for the officer to check in the seat panels that were askew as part of his inventory. The fact that the officer knew that contraband is often hidden by criminals in the panels did not invalidate the entire search.

Having considered defendant's remaining contentions, we find them without merit.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting). The officer's search of a vehicle which involved intentional violations of the police department's official vehicle inventory guidelines, the surrender of property from the vehicle to a third party in abrogation of those guidelines, the exclusion of that property from the official inventory list, and a warrantless search for narcotics, and which culminated in the complete physical disassembly of the contents of the trunk compartment, exceeded the bounds of a permissible warrantless search. I therefore dissent from the majority opinion's conclusion that such conduct is permissible so long as part of an asserted "inventory" of an impounded vehicle.

It is well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions" (*Katz v United States*, 389 US 347, 357 [1967]; *see also United States v Jeffers*, 342 US 48, 51 [1951]). While an inventory search is an exception to the warrant requirement (*see People v Sullivan*, 29 NY2d 69, 77 [1971]), the term "inventory search" is not a euphemism for a fishing expedition for incriminating materials (*see People v Johnson*, 1 NY3d 252, 256 [2003]; *People v Galak*, 80 NY2d 715, 719 [1993]). For an inventory search to be valid it must "be conducted pursuant to 'an

established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably' " (*Johnson*, 1 NY3d at 256, quoting *Galak*, 80 NY2d at 719). To protect against the conversion of a valid inventory search into a warrantless search, where police "rummag[e] in order to discover incriminating evidence" (*Florida v Wells*, 495 US 1, 4 [1990]), "[t]he procedure must be standardized so as to 'limit the discretion of the officer in the field' " (*Johnson*, 1 NY3d at 256, quoting *Galak*, 80 NY2d at 719). Such cabining of the officer's discretion ensures that "[a]n inventory search is exactly what its name suggests, a search designed to properly catalogue the contents of the item searched" (*Johnson*, 1 NY3d at 256).

Here, the officer conducting the search admitted that when he turned over some of defendant's property to his sister, he did so without authorization, and in violation of the guidelines.[1] Further, he admitted that he failed to properly inventory all of the items he released to her, also a violation of the guidelines, which require that the officer conducting the inventory "[r]emove all valuables from the vehicle and voucher on a separate **PROPERTY CLERK'S INVOICE**" (NY City Police Dept Patrol Guide Procedure No. 218-13 ["Inventory Searches of Automobiles and Other Property"] [hereinafter guidelines]). The guidelines could not be clearer, given this unmistakable directive to produce a list on a specified official form.

The officer not only violated the guidelines' procedure for securing and listing property found in the vehicle, but he failed to create a meaningful inventory list—"the hallmark of an inventory search" (*Johnson*, 1 NY3d at 256). Although an inventory list may be meaningful even though not detailed (*see e.g. People v Walker*, 20 NY3d 122, 127 [2012]), it would defy logic to permit an officer to create an inventory list that explicitly excludes property turned over to a third party in contravention of official policy. It is one thing to summarize items, even in the most general of terms, and it is quite another to have a partial listing that intentionally excludes personal items removed in large bags from the vehicle and turned over to someone else. As we have stated previously, "[a]rbitrary decision-making about what to seize, no less than arbitrary decision-making about

---

1. It is irrelevant that the officer released the property to defendant's sister. Nothing in the facts suggest that by permitting his sister to take some of his property defendant waived protections afforded under the Constitution against warrantless searches.

what to search, creates unacceptable risks of unreasonableness in an inventory search policy" (*Galak*, 80 NY2d at 721).

If the officer's transgressions were limited to his violations of the guidelines by his release of defendant's property to his sister, and the failure to list that property, then this exercise of unauthorized discretion might very well be insufficient support for defendant's motion to suppress. However, there was other conduct which, along with this failure to comply with the guidelines, in my opinion, supports suppression.

Here, the officer admitted that his search for items to inventory transformed into a deliberate and typical warrantless search for drugs. The officer conducting the search testified, and the trial court found, that when he saw the vehicle's seat panels were "askew" he specifically looked inside them for narcotics. Nothing in the record supports a conclusion that once the search for contraband in one section of the vehicle (the askew panels) proved fruitless, the search of any other section of the vehicle (i.e., the trunk) regained its status under the protective cover of a valid inventory. "While incriminating evidence may be a consequence of an inventory search, it should not be its purpose" (*Johnson*, 1 NY3d at 256).

Having failed to find any contraband in the interior of the vehicle during the admitted warrantless search, the officer then proceeded to search the trunk by fully disassembling its contents. This search of items attached to the vehicle's interior casts further doubt on the inventory nature of the vehicle search. There is no dispute as to the condition of the trunk, its contents and the officer's actions. The contents were described as speakers physically attached to the interior, large "[e]nough to take up the entire trunk space." The officer admitted that in order to remove the speakers he had to unscrew them, disconnect them and remove the wiring, a process that required him leaving the vehicle to find a screwdriver, and which took time and effort to complete. The officer described this process as "laborious." In other words, this was not a simple collection and removal of items for cataloguing purposes. Thus, the alleged "inventory" nature of the search of the remaining parts of the vehicle is questionable in light of the assiduousness of the officer's deconstruction of the trunk, completed on the heels of his admitted search for narcotics in the interior of the vehicle.

As the majority notes, it is the People's burden to demonstrate the validity of the inventory search (majority op at 272,

citing *People v Gomez*, 13 NY3d 6, 11 [2009]). There is nothing in the record to support a finding that the officer here followed proper protocol in dismantling the trunk's contents. The trial court found that the officer testified he removed the speakers because they were not an original part of the automobile and would not have been accepted by the pound. Where the officer admitted to a flagrant digression from the guidelines, conducted a warrantless search for drugs in the seat pockets, followed by a time-consuming disassembling of the trunk's contents, I would require more than the officer's statements that he was following protocol, or that the property would not be accepted at the pound. After all, the guidelines contemplate that some items may be left in the vehicle.[2] Thus, his testimony and the written guidelines at least suggest that the officer did not have a full and correct understanding concerning items that could be left in the vehicle, and whether a full dismantling of an attached speaker system was permissible as part of the inventory.

Today's decision has the potential to encourage officers to ignore established written police protocols, and use the opportunity provided by circumstances supporting a valid inventory search to instead exercise discretion in such a way as to convert a valid vehicle inventory into a constitutionally impermissible warrantless search. Therefore, I dissent.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge RIVERA dissents in an opinion; Judge ABDUS-SALAAM taking no part.

Order affirmed.

---

2. The guidelines state that an officer may force open certain compartments, including the trunk, only if this can be accomplished with minimal damage, and also states that the officer may list "[p]roperty of little value that is left inside the car," in the officer's activity log (NY City Police Dept Patrol Guide Procedure No. 218-13). Thus, it is not accurate that everything must be removed during the inventory.