■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALVIN CORBIN, Appellant. [993 NYS2d 746]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Foley, J., at plea; Riviezzo, J., at sentencing), rendered April 27, 2012, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence.

Ordered that the judgment is affirmed.

Contrary to the defendant's contention, he validly waived his right to appeal at the time he entered his plea of guilty. The record of the plea proceedings reveals that, after acknowledging the various trial rights that he was forfeiting as a consequence of his plea of guilty, the defendant allocuted to the offense of attempted criminal possession of a weapon in the third degree. The Supreme Court then questioned the defendant with regard to a printed waiver of appeal form that he had signed, ascertaining that the defendant had received a sufficient opportunity to discuss the waiver with his attorney, that he acknowledged that the waiver was not a legal requirement of every plea but had been negotiated as part of this particular plea, and that he understood that he was giving up the right to appeal "any issue that may arise from this case except certain constitutional issues." Likewise, the printed waiver form recited that the right to appeal was "separate and distinct" from the defendant's trial rights, and was not automatically waived by a plea of guilty, but that the waiver of appeal was a condition of this particular plea agreement and that the resultant conviction and sentence would be final. Based on its questioning, the court found that the de-

fendant's waiver of the right to appeal was knowing, voluntary and intelligent, and it executed the form in open court.

Notwithstanding the foregoing, the defendant challenges the propriety of the Supreme Court's denial, after a hearing, of that branch of his omnibus motion which was to suppress certain physical evidence. In this regard, he contends that his waiver of the right to appeal was invalid because "the court never explained . . . the constitutional issues that could be appealed despite the waiver, or the constitutional issues that were unappealable by virtue of the waiver" and, thus, it "created uncertainty concerning the constitutional issues forfeited by the appeal waiver." However, the record demonstrates that the waiver of appeal was valid and entitled to enforcement, since it establishes that the defendant appreciated the consequences of the waiver and knowingly and voluntarily accepted them (*see People v Lopez*, 6 NY3d 248, 256 [2006]).

When the Supreme Court correctly advised the defendant that some constitutional issues would survive his waiver (*see People v DeSimone*, 80 NY2d 273, 280 [1992]), the defendant indicated that he understood the meaning of this information. He did not express any confusion or question the court or his attorney (with whom he had an adequate opportunity to discuss the matter) regarding the waiver, nor did he inquire as to whether any particular issue would survive the waiver. Contrary to the defendant's contention, the court was not required to enumerate each and every potential appellate argument that the defendant might still possibly be able to raise despite the waiver, as nothing in the law places such an unrealistic burden upon the court. Similarly, there was no requirement that the defendant expressly waive every potential claim or defense (*see People v Muniz*, 91 NY2d 570, 574-575 [1998]; *People v Abdul*, 112 AD3d 644, 645 [2013]) in order to produce a valid, unrestricted waiver of the right to appeal that was knowing, voluntary, and intelligent, and which encompassed all waivable issues (*see People v Ceparano*, 96 AD3d 774, 775 [2012]; *People v Galunas*, 93 AD3d 892, 893 [2012]). Rather, no particular litany by the court was required (*see People v Bradshaw*, 18 NY3d 257, 265 [2011]; *People v Moissett*, 76 NY2d 909, 910-911 [1990]), and the waiver herein clearly covered all aspects of the case (*see People v Callahan*, 80 NY2d 273, 280 [1992]), including the challenged suppression ruling (*see People v Kemp*, 94 NY2d 831, 833 [1999]).

Additionally, the Supreme Court did not merely rely on the defendant's execution of the printed waiver form, but conducted an adequate waiver inquiry on the record (*cf. People v DeSimone*,

80 NY2d at 282-283). Moreover, the court took care not to group the right to appeal with the trial rights automatically forfeited as the consequence of a plea of guilty (*cf. People v Lopez*, 6 NY3d at 257). Accordingly, the defendant's valid waiver of his right to appeal precludes review of his contention that the hearing court erred in denying suppression (*see People v Kemp*, 94 NY2d at 833; *People v Mackey*, 109 AD3d 1008 [2013]; *People v Bennett*, 102 AD3d 881 [2013]; *People v Palmer*, 95 AD3d 1039 [2012]; *People v Foy*, 89 AD3d 1103 [2011]). Mastro, J.P., Sgroi and LaSalle, JJ., concur.

Balkin, J., dissents, and votes to reverse the judgment, grant that branch of the defendant's motion which was to suppress a handgun, and dismiss the indictment, with the following memorandum: At the plea proceeding, the Supreme Court's explanation of the waiver of the right to appeal created a significant ambiguity as to the scope of the waiver. That ambiguity was never resolved, and I conclude that it renders the waiver unenforceable, thus permitting us to review the merits of the defendant's suppression claim. Moreover, I conclude that the defendant's suppression claim has merit. Accordingly, I respectfully dissent, and would reverse the judgment, allow the defendant to withdraw his plea of guilty, and grant the defendant's suppression motion.

To be sure, "no public policy preclud[es] defendants from waiving their rights to appeal as a condition of [a] plea" (*People v Seaberg*, 74 NY2d 1, 10 [1989]). Nonetheless, to be enforceable, an appeal waiver must be voluntary, knowing and intelligent (*see id.* at 11; *People v Callahan*, 80 NY2d 273, 276 [1992]). "An appellate waiver meets this standard when a defendant has 'a full appreciation of the consequences' of such waiver" (*People v Bradshaw*, 18 NY3d 257, 264 [2011], quoting *People v Seaberg*, 74 NY2d at 11; *see People v Brown*, 122 AD3d 133, 135-137 [2d Dept 2014]).

The majority relies heavily on the written waiver form, which recited that the "sentence and conviction will be final." As the majority also points out, however, the Supreme Court told the defendant, among other things, that he was surrendering the right to raise on appeal "any issue that may arise from this case except certain constitutional issues." There was no explanation of what those "certain constitutional issues" might have been. The majority, however, concludes that "the court was not required to enumerate each and every potential appellate argument that the defendant might still possibly be able to raise despite the waiver, as nothing in the law places such an unrealistic burden upon the court."

I agree that the Supreme Court was not required to enumerate every constitutional issue that survives a waiver. But, viewed in the context of this case, the court's oral statement, which contradicted the written form, created an important ambiguity that needed to be resolved. The only contested issue in this case was the constitutional issue pertaining to the warrantless search that resulted in the seizure of the gun. Accordingly, I conclude that, in light of its statement that "certain constitutional issues" survived the waiver, the court was required to tell the defendant that his constitutional suppression issue would not survive.

The record does not reflect that the defendant had a "full appreciation of the consequences" of the waiver (*People v Seaberg*, 74 NY2d at 11), at least with respect to whether he retained his right to challenge the Supreme Court's suppression ruling. Accordingly, the defendant is not foreclosed from having his suppression claim reviewed on appeal.

I therefore turn to the merits of that constitutional claim. At the suppression hearing, the sole witness, a police officer, testified as to the events surrounding the stop of the defendant's automobile, the defendant's arrest, and the removal of the defendant's automobile to a police station. The officer also testified that, upon performing an "inventory search" of the automobile, he found a loaded semiautomatic handgun in the trunk. The court denied that branch of the defendant's motion which was to suppress that handgun.

Inventory searches of an automobile after the lawful arrest of the driver are permissible as an exception to the warrant requirement (*see People v Padilla*, 21 NY3d 268, 272 [2013]; *People v Gonzalez*, 62 NY2d 386, 388-389 [1984]). The purpose of an inventory search is not to find—i.e., search for—evidence, but "to properly catalogue the contents of the item searched. The specific objectives of an inventory search, particularly in the context of a vehicle, are to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments" (*People v Johnson*, 1 NY3d 252, 256 [2003]; *see Florida v Wells*, 495 US 1, 4 [1990]).

Although the uncovering of incriminating evidence may not be the purpose of an inventory search, incriminating evidence found during a valid inventory search will not be suppressed (*see People v Padilla*, 21 NY3d at 272; *People v Johnson*, 1 NY3d at 256). In order to further the goals justifying the exception, "an inventory search should be conducted pursuant to 'an established procedure clearly limiting the conduct of individual

officers that assures that the searches are carried out consistently and reasonably' " (*People v Johnson*, 1 NY3d at 256, quoting *People v Galak*, 80 NY2d 715, 719 [1993]; *see People v Gomez*, 13 NY3d 6, 10 [2009]). The police procedure must be standardized so as to "limit the discretion of the officer in the field" (*People v Galak*, 80 NY2d at 719). "Thus, two elements must be examined: first, the relationship between the search procedure adopted and the governmental objectives that justify the intrusion and, second, the adequacy of the controls on the officer's discretion" (*id.*). In other words, there must be evidence of the policy as to inventory searches and that the particular inventory search at issue complied with that policy; the court must evaluate the adequacy of the policy itself, to ensure that it furthers the proper goals of and limits on inventory searches (*see People v Gomez*, 13 NY3d at 11; *People v Galak*, 80 NY2d at 719). Although the written policy itself need not be entered into evidence, there must be some evidence of what the procedure requires (*see People v Gomez*, 13 NY3d at 11; *People v Taylor*, 92 AD3d 961, 962 [2012]), and the officer's compliance with it (*see People v Padilla*, 21 NY3d at 272).

Here, the officer who testified at the suppression hearing was not asked about whether the New York City Police Department had a policy with respect to the conduct of inventory searches, the content of any such policy, or the officer's compliance with it (*cf. People v Taylor*, 92 AD3d at 962). In the absence of any evidence satisfying the People's burden of establishing the lawfulness of the search of the trunk of the defendant's automobile, the Supreme Court should have granted that branch of the defendant's motion which sought suppression of the handgun found during that search (*see People v Gomez*, 13 NY3d at 10-11; *People v Russell*, 13 AD3d 655, 657 [2004]).