People v Morales (2020 NY Slip Op 07919)





People v Morales


2020 NY Slip Op 07919


Decided on December 23, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SYLVIA O. HINDS-RADIX
BETSY BARROS
PAUL WOOTEN, JJ.


2018-08837
 (Ind. No. 322/17)

[*1]The People of the State of New York, respondent,
v
Anthony Morales, appellant.


Paul Skip Laisure, New York, NY (Priya Raghavan of counsel), for appellant.
Michael E. McMahon, District Attorney, Staten Island, NY (Morrie I. Kleinbart and Thomas B. Litsky of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Alexander Jeong, J.), rendered June 18, 2018, as amended June 20, 2018, convicting him of criminal possession of a controlled substance in the fifth degree, upon a jury verdict, and sentencing him to a determinate term of imprisonment of 4½ years, followed by a period of postrelease supervision of 2 years. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment, as amended, is modified, as a matter of discretion in the interest of justice, by reducing the sentence imposed from a determinate term of imprisonment of 4½ years, followed by a period of postrelease supervision of 2 years, to a determinate term of imprisonment of 2½ years, followed by a period of postrelease supervision of 1 year; as so modified, the judgment, as amended, is affirmed.
On September 19, 2017, the defendant was arrested outside of a building in Staten Island pursuant to a valid arrest warrant. At the time of arrest, the defendant was holding a small, black plastic bag in one of his hands. The arresting officer's partner removed the black bag from the defendant's hand, and the defendant was taken to the precinct station house. Upon arrival at the station house, the arresting officer tore open the black bag and discovered 17 small ziplock bags containing what was later determined to be 921 milligrams of cocaine.
The defendant was charged with criminal possession of a controlled substance in the fifth degree and criminal possession of a controlled substance in the seventh degree. On May 18, 2018, the defendant was convicted, upon a jury verdict, of criminal possession of a controlled substance in the fifth degree. On June 18, 2018, after being arraigned as a second felony offender, the defendant was sentenced to a determinate term of imprisonment of 4½ years, followed by a period of postrelease supervision of 2 years. The defendant appeals.
The defendant argues that the Supreme Court should have suppressed the cocaine recovered during an inventory search after his arrest because the People failed to present evidence demonstrating the validity of the search. The specific objectives of an inventory search are "to protect the property of the defendant, to protect the police against any claim of lost property, and to [*2]protect police personnel and others from any dangerous instruments" (People v Russell, 13 AD3d 655, 657; see People v Johnson, 1 NY3d 252, 256). An inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence" (People v Padilla, 21 NY3d 268, 272 [internal quotation marks omitted]). "To guard against this danger, the search must be conducted pursuant to an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably" (id. [internal quotation marks omitted]). The police procedure must be standardized so as to "limit the discretion of the officer in the field" (People v Galak, 80 NY2d 715, 719). "While incriminating evidence may be a consequence of an inventory search, it should not be its purpose" (People v Johnson, 1 NY3d at 256). "The People bear the burden of demonstrating the validity of the inventory search" (People v Padilla, 21 NY3d at 272).
We agree with the Supreme Court's determination that the People met their burden of demonstrating the validity of the subject inventory search (see People v Padilla, 21 NY3d at 272). The police officer who conducted the search testified regarding the policy for conducting inventory searches and that the purpose of such searches is to protect the defendant's property and to ensure that there is nothing that would be a danger to the defendant or an officer at the precinct station house. The officer further explained that it is New York City Police Department (hereinafter NYPD) policy to open containers during an inventory search and to itemize the contents inside. Contrary to the defendant's contention, the officer conducted the inventory search reasonably and consistently with NYPD policy even though he did not voucher the ripped, black plastic bag (see People v Padilla, 21 NY3d at 272-273). Although the officer testified that NYPD policy requires officers to itemize property that has little value, it was reasonable for the officer not to voucher the ripped, black plastic bag on the basis that it essentially had no value.
The defendant also argues that the Supreme Court erred in allowing the People to introduce prior bad act evidence regarding the warrant pursuant to which he was arrested. The question of whether evidence of one crime or bad act is admissible as evidence in the People's case in chief in the trial of another crime is determined by application of People v Molineux (168 NY 264), which allows for such evidence to be presented when it tends to establish a defendant's (1) intent, (2) motive, (3) knowledge, (4) common scheme or plan, or (5) identity (see People v Morris, 21 NY3d 588, 594). In certain circumstances, the purposes for which Molineux evidence may be used can include "completing the narrative of the events charged in the indictment and providing necessary background information" (People v Harris, 117 AD3d 847, 854; see People v Morris, 21 NY3d at 594).
Here, the People, in offering the arresting officer's testimony that there was an active parole warrant for the defendant's arrest, explained the police action and completed the narrative of events leading to the arrest and the subsequent recovery of the drugs. The Supreme Court providently exercised its discretion in permitting the People to elicit such testimony as its probative value in explaining the police encounter outweighed any undue prejudice to the defendant (see People v Morris, 21 NY3d at 596). Additionally, the court gave the jury an appropriate limiting instruction, to which defense counsel did not object, as to the limited purpose for which that evidence was received (see People v Bittrolff, 165 AD3d 690, 691; People v Townsend, 100 AD3d 1029, 1030).
At the time of sentencing, the defendant was 23 years old, with one prior felony conviction for attempted robbery in the second degree. In 2017, after his release from prison on that prior offense, he married, and fathered a child who was two months old at the time of sentencing. The defense counsel requested the Supreme Court to impose the minimum sentence of 2½ years' incarceration, followed by the minimum period of postrelease supervision, noting that the defendant was not charged with selling drugs, did not resist arrest, and was convicted of possessing a small amount of drugs. It was noted that the defendant's wife was present for the trial.
The Supreme Court imposed the maximum period of imprisonment of 4½ years' incarceration (see Penal Law § 70.70[4][b][iii]) and 2 years postrelease supervision (see Penal Law § 70.45[2][c]), apparently based upon the defendant's claim during the presentence interview that [*3]the judge, the prosecutor, and the jury showed favoritism to the arresting officer, and the defendant did not like how the trial was conducted. At sentencing, when the court asked the defendant to explain that statement, the defendant stated that, although he thought the jury showed "favoritism," he wanted "to move on from this" and he"learned [his] lesson." The court, in response, stated that although "[o]bviously this is not the crime of the century," and "you're entitled to your opinion," that opinion demonstrated a "willingness not to accept any responsibility."
"An intermediate appellate court has broad, plenary power to modify a sentence that is unduly harsh or severe under the circumstances" (People v Delgado, 80 NY2d 780, 783). Contrary to the conclusion of our dissenting colleague, that power "may be exercised, if the interest of justice warrants, without deference to the sentence court" (People v Delgado, 80 NY2d at 783; see People v Kordish, 140 AD3d 981, 982), especially where, as here, the sentencing court acted, at least in part, out of umbrage to criticism as to how the trial was conducted. In this case, considering the nonviolent nature of the crime involving a relatively small amount of drugs in the defendant's possession, the defendant's reported substance abuse issues, and the fact that the defendant is married and has a young child, the sentence was excessive to the extent indicated herein (see People v Suitte, 90 AD2d 80).
HINDS-RADIX, BARROS and WOOTEN, JJ., concur.
DILLON, J.P., concurs in part and dissents in part, and votes to affirm the judgment, as amended, with the following memorandum:
I respectfully dissent from the portion of the majority's determination that finds the defendant's sentence as excessive.
Sentencing is a discretionary function of the trial judge (see People v Felix, 58 NY2d 156, 161; People v Suitte, 90 AD2d 80, 83). "'The determination of an appropriate sentence requires the exercise of discretion after due consideration given to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction; i.e., societal protection, rehabilitation and deterrence'" (People v Gonzalez, 187 AD3d 1042, quoting People v Farrar, 52 NY2d 302, 305).
Here, the Supreme Court considered, inter alia, the defendant's status as a second felony offender as a result of a prior conviction for attempted robbery in the second degree, the fact that he was on parole at the time of his arrest, and significantly, that the presentence report contained information that he had not accepted responsibility for his actions. The court also noted that while the incident was "not the crime of the century," the defendant nevertheless possessed "a pretty good amount of cocaine," and did so only eight months after being released from prison for his prior felony conviction. Additionally, the record reflects that the defendant had a history of bench warrants, orders of protection against him, a prior misdemeanor conviction, a violation of probation, and drug and anger issues. Under the circumstances presented, there is nothing about this case or this defendant to warrant our finding an improvident exercise of discretion in the sentence imposed (see People v Watson, 163 AD3d 855, 870). For these reasons, I vote to affirm the judgment of conviction.
ENTER:
Aprilanne Agostino
Clerk of the Court