[803 NE2d 385, 771 NYS2d 64]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES JOHNSON, Appellant.

Argued November 20, 2003; decided December 22, 2003

## POINTS OF COUNSEL

*Legal Aid Society Criminal Appeals Bureau,* New York City (*Richard Joselson, Laura R. Johnson* and *Judith Stern* of counsel), for appellant. Because the People presented absolutely no evidence establishing that the officer searched appellant's glove compartment pursuant to established police department procedures, the handgun recovered during the search, as well as appellant's postarrest statements, must be suppressed as the fruits of an unlawful inventory search. (*Florida v Wells,* 495 US 1; *South Dakota v Opperman,* 428 AD2d 364; *People v Galak,* 80 NY2d 715; *Colorado v Bertine,* 479 US 367; *Illinois v Lafayette,* 462 US 640; *People v Robinson,* 97 NY2d 341; *United States v Thompson,* 29 F3d 62; *United States v Arango-Correa,* 851 F2d 54; *People v Lewis,* 217 AD2d 591; *People v Minto,* 272 AD2d 558.)

*Robert M. Morgenthau, District Attorney,* New York City (*Donald J. Siewert* and *Mark Dwyer* of counsel), for respondent. The officer properly searched the glove compartment of defendant's car and found a loaded gun as part of a limited and preliminary inventory search. Defendant's admission that he carried the gun for his own protection was not the fruit of unlawful police conduct. (*People v Richardson,* 41 NY2d 886; *People v Bleakley,* 69 NY2d 490; *People v Albro,* 52 NY2d 619; *People v Galak,* 80 NY2d 715; *People v Gonzalez,* 62 NY2d 386; *South Dakota v Opperman,* 428 US 364; *Cady v Dombrowski,* 413 US 433; *Colorado v Bertine,* 479 US 367; *Florida v Wells,* 495 US 1; *United States v Flores,* 122 F Supp 2d 491.)

## OPINION OF THE COURT

G.B. SMITH, J.

Following an arrest for driving with a suspended license, the police recovered a loaded gun in defendant's vehicle. The issue in this case is whether the evidence was seized pursuant to a

valid inventory search. We agree with the suppression court and the defendant that the evidence adduced at the hearing was insufficient to establish that the alleged inventory search was valid, and therefore reverse the Appellate Division.

## I.

Defendant James Johnson was indicted for multiple counts of criminal possession of a weapon. At the suppression hearing, the arresting officer testified that on October 2, 1999, he and his partner were patrolling an area of Harlem in an unmarked car and in plainclothes. The officers were part of the Manhattan North Street Crime Unit which focused on "aggressive crimes," including removing guns from the streets. The arresting officer had been a member of the Unit for about six or seven months and this was his third or fourth arrest. His partner was a sergeant.

The arrest took place around 7:10 P.M. at 133rd Street and Seventh Avenue (Adam Clayton Powell, Jr. Boulevard). About eight minutes earlier, the officers had observed defendant's vehicle, a black Isuzu Trooper with Virginia license plates, "traveling at a high rate of speed cutting across lanes" without always signaling. The officers had initially stopped behind defendant's vehicle at a red light at 133rd Street and Seventh Avenue. The officers learned that the car was a rental after radioing another vehicle for a plate check.

The officers followed the vehicle as it made a left turn on 135th Street heading west to Eighth Avenue (Frederick Douglass Boulevard), then a right turn heading north until 145th Street, then another right heading east to Seventh Avenue and another right heading south until returning to 133rd and Seventh Avenue. During the pursuit, the officer observed that other cars in front of the vehicle were forced to move out of its way and pedestrians were "jumping back on the sidewalks."

As the officer exited his vehicle, he observed defendant reach for the glove compartment, open it, and then close it. When the officer reached the driver's side of the vehicle, the officer told defendant that he had been pulled over for "driving kind of reckless." When asked for his driver's license and registration, defendant offered his license and stated that the car was a rental, but that he did not have the rental agreement with him. The officer then asked him to look in the glove compartment, but defendant stated that the agreement was not there. When the officer radioed another vehicle for a license check, the license

came back suspended. The officer then told defendant to step out of the vehicle, conducted a pat-down search, and directed him to the back of the vehicle. Although the officer had yet to inform defendant, defendant was under arrest for driving with a suspended license.

While defendant remained at the back of his car with the officer's partner, the officer—suspecting that there might be something illegal in the glove compartment—walked to the passenger side of the vehicle and opened the glove compartment, finding a loaded handgun. The officer left the gun in the compartment, approached the defendant and handcuffed him. While in the police vehicle and at the precinct, defendant stated that he was a bodyguard and the gun was for his protection.

The officer testified that the search of the glove compartment was undertaken pursuant to an inventory search. The officer further testified that the objectives of such a search were to make the car safe for the precinct personnel who would be transporting the vehicle and to protect against claims that items were missing. The officer did not complete any inventory forms at the scene, or at the precinct, and did not produce one at the suppression hearing. He did, however, complete a stop and frisk report, noting that he recovered a loaded firearm during a search incident to arrest. The vehicle was transported to the 32nd Precinct, where it was returned to defendant's wife upon production of the rental agreement. The car was never vouchered.

The hearing court granted defendant's motion to suppress the gun and the incriminating statement, rejecting the People's argument that the gun was recovered pursuant to a proper inventory search. The court found that the People offered no evidence with respect to procedures officers must follow during inventory searches. The Appellate Division reversed, finding that the officer had conducted a "valid preliminary and limited inventory search at the scene" (298 AD2d 281, 282). We now reverse.

## II.

Following a lawful arrest of the driver of an automobile that must then be impounded, the police may conduct an inventory search of the vehicle. Defendant does not challenge the stop. Rather, he argues that the People failed to show that the search of the glove compartment box was a proper inventory search. We agree.

An inventory search is exactly what its name suggests, a search designed to properly catalogue the contents of the item searched. The specific objectives of an inventory search, particularly in the context of a vehicle, are to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments (*Florida v Wells*, 495 US 1, 4 [1990]). As the Supreme Court has stated, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence" (*id.*). To guard against this danger, an inventory search should be conducted pursuant to "an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably" (*People v Galak*, 80 NY2d 715, 719 [1993]). The procedure must be standardized so as to "limit the discretion of the officer in the field" (*id.*). While incriminating evidence may be a consequence of an inventory search, it should not be its purpose.

Here, the evidence adduced at the hearing was clearly insufficient to satisfy the prosecutor's initial burden of establishing a valid inventory search. Although the officer testified that he knew of the general objectives of an inventory search, and declared that his search of the glove compartment box fulfilled those objectives, the People offered no evidence to establish the existence of any departmental policy regarding inventory searches. Even assuming such a policy existed, the People failed to produce evidence demonstrating either that the procedure itself was "rationally designed to meet the objectives that justify inventory searches in the first place" (*id.* at 719), or that this particular officer conducted this search properly and in compliance with established procedures. Indeed, if any policy did exist here that was properly designed to meet the goals of accounting for the contents of the vehicle and to protect others from harm, and that properly limited an officer's discretion, it can hardly be said that the officer in this case followed the policy by conducting a search that included only the glove compartment, and upon finding a gun, leaving it in place.

Moreover, while the officer filled out a stop and frisk report in which he stated that the search here had been conducted incident to an arrest, he did not fill out the hallmark of an inventory search: a meaningful inventory list. "The policy or practice governing inventory searches should be designed to produce an inventory" (*Wells*, 495 US at 4; *see also Galak*, 80

NY2d at 720 [inventory search must "create a usable inventory"]).

In addition to finding lack of proof that the inventory search was proper, the hearing court also concluded the claim that the search was an inventory search was "less than a believable claim and it appears to be merely a pretext to cover for what was the officer's desire in the first place, to see what the defendant was up to and to somehow get into the interior of his car to see if the defendant was in possession of contraband or the weapon."

In reversing as a matter of law, the Appellate Division, citing *People v Robinson* (97 NY2d 341, 348-349 [2001]), which was decided after the trial court's decision in this case, found that the search was a proper inventory search. In *Robinson*, this Court adopted as a matter of state law the holding of the Supreme Court in *Whren v United States* (517 US 806 [1996]) "that where a police officer has probable cause to detain a person temporarily for a traffic violation, that seizure does not violate the Fourth Amendment to the United States Constitution even though the underlying reason for the stop might have been to investigate some other matter" (97 NY2d at 348). Relying on *Robinson*, the Appellate Division found that the officer's motives for conducting the inventory search did not matter as long as the stop and the arrest were lawful. In other words, the Appellate Division improperly applied the law governing pretext stops to inventory searches.

Accordingly, the order of the Appellate Division should be reversed, the defendant's motion to suppress granted and the indictment dismissed.

Chief Judge Kaye and Judges Ciparick, Rosenblatt, Graffeo and Read concur.

Order reversed, etc.