[912 NE2d 555, 884 NYS2d 339]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v VICTOR GOMEZ, Respondent.

Argued June 4, 2009; decided June 30, 2009

## POINTS OF COUNSEL

*Robert M. Morgenthau, District Attorney,* New York City (*Jung Park* and *Mark Dwyer* of counsel), for appellant. Officer Vettell properly conducted an inventory search of Victor Gomez's car, which began at the scene and continued at the precinct. (*People v Johnson,* 1 NY3d 252; *People v Jackson,* 279 AD2d 357; *People v Figueroa,* 6 AD3d 720; *Illinois v Lafayette,* 462 US 640; *People v Galak,* 80 NY2d 715; *Colorado v Bertine,* 479 US 367; *Florida v Wells,* 495 US 1; *People v Dickens,* 218 AD2d 584, 88 NY2d 1031; *United States v Thompson,* 29 F3d 62; *United States v Skillern,* 947 F2d 1268, 503 US 949.)

*DLA Piper LLP (US),* New York City (*Christopher C. Land* of counsel), and *Legal Aid Society* (*Steven Banks, David Crow* and *Andrew Fine* of counsel) for respondent. I. The People of the State of New York's appeal should be dismissed because the Appellate Division's determination to reverse based on the failure to demonstrate that a valid inventory search was conducted was

grounded on a mixed question of law and fact. (*People v Mc-Cready*, 68 NY2d 981; *People v Harrison*, 57 NY2d 470; *People v Hallman*, 92 NY2d 840; *People v Esquilin*, 91 NY2d 902; *People v Galak*, 80 NY2d 715; *People v Johnson*, 1 NY3d 252; *People v Hartman*, 294 AD2d 446, 100 NY2d 568; *People v Montilla*, 268 AD2d 270, 95 NY2d 830; *People v Reddick*, 265 AD2d 855, 95 NY2d 822; *People v Powell*, 92 NY2d 886.) II. The Appellate Division properly determined that a warrantless search of a vehicle is not sustainable as an inventory search if the procedures of an inventory search are not described, there is no testimony that an inventory of all items was taken, and if the only "inventory" taken is incriminating evidence. (*People v Galak*, 80 NY2d 715; *Colorado v Bertine*, 479 US 367; *Florida v Wells*, 495 US 1; *South Dakota v Opperman*, 428 US 364; *People v Johnson*, 1 NY3d 252; *People v Gonzalez*, 62 NY2d 386; *Illinois v Lafayette*, 462 US 640; *People v Robinson*, 97 NY2d 341; *People v Minto*, 272 AD2d 558; *People v Colon*, 202 AD2d 708.)

**OPINION OF THE COURT**

JONES, J.

The issue before us is whether the People met their initial burden of establishing a valid inventory search. We hold that they have not.

On June 23, 2005, at approximately 12:45 A.M., two New York City Police Department (NYPD) officers were on patrol in a marked police car in Manhattan (area of 107th Street and Amsterdam Avenue) when one officer noticed a 1999 Dodge Stratus driving erratically. This officer conducted a computer search of the vehicle's license plate and found that defendant Victor Gomez owned the vehicle, but that his driver's license (and driving privileges) had been suspended. The officers stopped the vehicle, confirmed that defendant, the sole occupant of the vehicle, was driving with a suspended license, arrested defendant for same and impounded the vehicle. Defendant was cuffed and placed in the patrol car.

One of the arresting officers, who recognized defendant from a prior incident in which defendant had threatened to shoot the officer and himself,[1] and other officers began searching the car. Because the door on the driver's side was blocked due to the

---

1. On or about June 22, 2005, when one of the arresting officers responded to a domestic dispute at the home of defendant's mother, defendant made these threats. Although this officer neither searched for nor recovered a gun, he took defendant to Bellevue Hospital for treatment.

way it was parked, an officer accessed the car through the passenger side and conducted a cursory search of the car's interior, recovering nothing. The police also searched the trunk of defendant's car and found a paper bag containing a powdered substance that appeared to be cocaine, a plastic bag with white residue, an electric scale and a small manilla envelope containing red pills. Because a crowd was gathering at the scene, it was decided that the search would be continued at the precinct. While driving defendant's car to the station, an officer discovered 45 empty plastic "baggies" in the driver's side door panel.

Defendant, who was charged with criminal possession of a controlled substance in the third degree and criminally using drug paraphernalia in the second degree, moved to suppress the items recovered during the search of his vehicle. After a combined *Mapp*, *Huntley*, *Dunaway* hearing in which the arresting officer who searched defendant's car testified, Supreme Court denied defendant's motion, finding that it was reasonable, under the circumstances, for the police to conduct an inventory search of defendant's vehicle. Subsequently, defendant, in satisfaction of the indictment, pleaded guilty to criminal possession of a controlled substance in the third degree and was sentenced, as a second felony offender, to a determinate prison term of $3^1/_2$ years.[2]

In a 4-1 decision, the Appellate Division reversed the conviction, granted defendant's motion to suppress the evidence and dismissed the indictment (50 AD3d 407 [2008]). According to the majority, the People failed to (1) "establish the content of any standardized procedure for inventory searches promulgated by the [NYPD]" (*id.* at 409), (2) come forward with evidence that the search of defendant's car was conducted in accordance with any such standardized procedure and (3) establish that the police created any meaningful inventory list—"the hallmark of an inventory search" (*id.*, quoting *People v Johnson*, 1 NY3d 252, 256 [2003])—of the items found in defendant's car. The dissenting Justice argued that defendant's claims were not preserved for appellate review and that even if they were, the People met their initial burden of establishing a valid inventory search. A Justice of the Appellate Division granted the People leave to appeal, and we now affirm.

---

**2.** According to the People, defendant has completed his sentence and is at liberty.

In *People v Galak* (80 NY2d 715 [1993]), this Court noted:

"The analysis of what constitutes a reasonable inventory search begins with the language of the Fourth Amendment, which protects citizens not from all searches by governmental actors but only from those that are 'unreasonable'. In its modern Fourth Amendment jurisprudence, the Supreme Court has held that the reasonableness of a search is calculated by weighing the governmental and societal interests advanced by the search against the individual's right to be free from arbitrary interference by law enforcement officers (*United States v Brignoni-Ponce*, 422 US 873, 878 [remaining citations omitted])" (80 NY2d at 718).

Further,

"[a]n inventory search is . . . designed to properly catalogue the contents of the item searched. The specific objectives of an inventory search, particularly in the context of a vehicle, are to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments (*Florida v Wells*, 495 US 1, 4 [1990]). . . . '[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence' (*id.*). To guard against this danger, an inventory search should be conducted pursuant to 'an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably' (*People v Galak*, 80 NY2d 715, 719 [1993]). The procedure must be standardized so as to 'limit the discretion of the officer in the field' (*id.*). While incriminating evidence may be a consequence of an inventory search, it should not be its purpose" (*Johnson*, 1 NY3d at 256).

In short, when determining the validity of an inventory search, "two elements must be examined: first, the relationship between the search procedure adopted and the governmental objectives that justify the intrusion and, second, the adequacy of the controls on the officer's discretion" (*Galak*, 80 NY2d at 719).

As relevant to the particular case, courts may take judicial notice of the standardized search procedure. While this procedure need not be offered into evidence, a description of what the procedure requires must be proffered.

■ Here, the People did not sustain their initial burden of establishing a valid inventory search. Although the NYPD has a standardized, written protocol governing inventory searches in its Patrol Guide and the arresting officer testified that he was familiar with it, the People offered no evidence that the police officers conducted this search in accordance with the protocol. Even assuming it was reasonable for the officers to search the immediate area of the passenger compartment of defendant's car for contraband to ensure the safety of the officer driving the car back to the police precinct, the People did not establish the circumstances under which opening and searching a closed trunk or a door panel would be justified under the protocol.

■ Moreover, our jurisprudence requires that a police officer prepare a meaningful inventory of the contents of an accused's car (see Johnson, 1 NY3d at 256; Galak, 80 NY2d at 720). Here, although the arresting officer filled out a voucher—a form police officers use to list items held as evidence—and forfeiture paperwork, the People failed to establish that no other items aside from the contraband were found in defendant's vehicle. Our determination is not based on the officer's failure to prepare the inventory search form prescribed under the Patrol Guide protocol. Such an inflexible rule could unnecessarily hamstring police officers in the exercise of their duties. Thus, the failure to use an inventory search form, while a technical defect, is not fatal to the establishment of a valid inventory search as long as (1) the search, in accordance with the "standardized procedure," is designed to produce an inventory and (2) the search results are fully recorded in a usable format. Simply put, the search at bar was not designed to produce an inventory.

Accordingly, the order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur; Chief Judge LIPPMAN taking no part.

Order affirmed.