THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID TAYLOR, Respondent. [940 NYS2d 103]—

The Supreme Court erred in granting that branch of the defendant's omnibus motion which was to suppress physical evidence. "An inventory search is . . . designed to properly catalogue the contents of the item searched. The specific objectives of an inventory search, particularly in the context of a vehicle, are to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments" (*People v Johnson*, 1 NY3d 252, 256 [2003]). " '[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence' " (*id.*, quoting *Florida v Wells*, 495 US 1, 4 [1990]). "To guard against this danger, an inventory search should be conducted pursuant to 'an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably' " (*People v Johnson*, 1 NY3d at 256, quoting *People v Galak*, 80

NY2d 715, 719 [1993]). "The procedure must be standardized so as to 'limit the discretion of the officer in the field' " (*People v Johnson*, 1 NY3d at 256, quoting *People v Galak*, 80 NY2d at 719). "While incriminating evidence may be a consequence of an inventory search, it should not be its purpose" (*People v Johnson*, 1 NY3d at 256).

"[W]hen determining the validity of an inventory search, 'two elements must be examined: first, the relationship between the search procedure adopted and the governmental objectives that justify the intrusion and, second, the adequacy of the controls on the officer's discretion' " (*People v Gomez*, 13 NY3d 6, 10 [2009], quoting *People v Galak*, 80 NY2d at 719).

As is relevant to this appeal, "courts may take judicial notice of the standardized search procedure. While this procedure need not be offered into evidence, a description of what the procedure requires must be proffered" (*People v Gomez*, 13 NY3d at 11). Here, contrary to the finding of the Supreme Court, the procedure utilized "d[id] what it must do: create[d] a usable inventory" (*People v Galak*, 80 NY2d at 720, *see People v Gomez*, 13 NY3d at 11; *People v Cochran*, 22 AD3d 677, 678 [2005]).

Significantly, the Court of Appeals has explained that the failure to use an "inventory search form" is "not fatal to the establishment of a valid inventory search as long as (1) the search, in accordance with the 'standardized procedure,' is designed to produce an inventory and (2) the search results are fully recorded in a usable format" (*People v Gomez*, 13 NY3d at 11). Here, contrary to the finding of the Supreme Court, the arresting officer specifically testified that the procedure routinely followed was to use a "property clerk's invoice" form, also referred to as a "voucher," to record the items removed from a vehicle during an inventory. Moreover, the search results were fully recorded in this manner by the officer in this case (*id.*; *see People v Cochran*, 22 AD3d at 678).

Contrary to the further finding of the Supreme Court, there is nothing in the hearing testimony to support the conclusion that the back seat of the vehicle was "removed." The People established that the lifting up of the middle seat of the back row of the vehicle, underneath which there was a "metal," "square" storage area, was justified under the established police inventory procedure (*see generally People v Gomez*, 13 NY3d at 11). The record supports the conclusion that the search was conducted in accordance with the New York City Police Department Patrol Guide, of which we take judicial notice (*see People v Gomez*, 13 NY3d at 11), which states that officers should search areas under the seats and any closed containers in a vehicle as

part of an inventory search (*see* NYPD Patrol Guide § 218-13). Moreover, all of the items were removed and inventoried, and no property was left in the vehicle when the search was complete (*cf. People v Gomez*, 13 NY3d at 10-11; *see generally People v Galak*, 80 NY2d at 718-719). Furthermore, the evidence adduced at the suppression hearing was sufficient to establish that the motivation of the police officers in conducting the inventory search was caretaking rather than criminal investigation (*see People v Galak*, 80 NY2d at 718-719; *People v Cochran*, 22 AD3d at 677).

Accordingly, considering the police testimony elicited on both direct and cross-examination, we find that the hearing evidence amply demonstrated that the search in this case was performed pursuant to an established and standardized procedure which limited the discretion of the police, safeguarded the defendant's constitutional rights, and fulfilled the legitimate purposes of a valid inventory search. Mastro, A.P.J., Chambers and Roman, JJ., concur.

Belen, J., dissents and votes to affirm the order with the following memorandum: The majority's upholding of the purported inventory search of the defendant's vehicle despite the lack of any evidence demonstrating that the police officer who conducted the search was familiar with departmental regulations regarding inventory searches or that the search was conducted pursuant to any such regulations is inconsistent with precedent of both the United States Supreme Court (*see e.g. Colorado v Bertine*, 479 US 367 [1987]; *Illinois v Lafayette*, 462 US 640 [1983]), and the Court of Appeals (*see e.g. People v Gomez*, 13 NY3d 6 [2009]; *People v Galak*, 80 NY2d 715 [1993]). I therefore dissent, and would affirm the Supreme Court's order granting that branch of the defendant's omnibus motion which was to suppress evidence found in his vehicle.

Inventory searches are an exception to the warrant requirement under the Federal and State constitutions (*see* US Const 4th, 14th Amends; NY Const, art I, § 12; *Colorado v Bertine*, 479 US at 371; *Illinois v Lafayette*, 462 US at 643; *Cady v Dombrowski*, 413 US 433, 441-442 [1973]; *People v Galak*, 80 NY2d at 719). The purpose of an inventory search is "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger" (*Colorado v Bertine*, 479 US at 372; *see Florida v Wells*, 495 US 1, 4 [1990]; *South Dakota v Opperman*, 428 US 364, 369 [1976]; *People v Johnson*, 1 NY3d 252, 256 [2003]; *People v Galak*, 80 NY2d at 718, 720). "While the discovery of incriminating evidence may be a consequence of an

inventory search, it should not be its purpose" (*People v Russell*, 13 AD3d 655, 657 [2004]; *see Florida v Wells*, 495 US at 4; *People v Johnson*, 1 NY3d at 256).

For an automobile inventory search to withstand a defendant's suppression motion, the People must establish that it was conducted pursuant to a standard departmental procedure that conforms with constitutional dictates (*see Colorado v Bertine*, 479 US at 374-375; *People v Galak*, 80 NY2d at 716; *People v Elpenord*, 24 AD3d 465, 467 [2005]). Specifically, "the procedure must be rationally designed to meet the objectives that justify the search in the first place," and "the procedure must limit the discretion of the officer in the field" (*People v Galak*, 80 NY2d at 719, citing *Florida v Wells*, 495 US at 4; *see South Dakota v Opperman*, 428 US at 384 [Powell, J., concurring]; *People v Banton*, 28 AD3d 571, 571-572 [2006]). "The underlying rationale for allowing an inventory exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of the inventory search. This absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering evidence of crime" (*Colorado v Bertine*, 479 US at 376 [Blackmun, J., concurring] [citations omitted]).

Recently, in *People v Gomez* (13 NY3d 6 [2009]), the Court of Appeals advised: "As relevant to the particular case, courts may take judicial notice of the standardized search procedure. While this procedure need not be offered into evidence, *a description of what the procedure requires must be proffered.*

"Here, the People did not sustain their initial burden of establishing a valid inventory search. Although the NYPD has a standardized, written protocol governing inventory searches in its Patrol Guide and the arresting officer testified that he was familiar with it, *the People offered no evidence that the police officers conducted this search in accordance with the protocol.* Even assuming it was reasonable for the officers to search the immediate area of the passenger compartment of defendant's car for contraband to ensure the safety of the officer driving the car back to the police precinct, *the People did not establish the circumstances under which opening and searching a closed trunk or a door panel would be justified under the protocol*" (*id.* at 11 [emphasis added]).

Similarly, here, the People did not sustain their initial burden under *Gomez* of establishing a valid inventory search. Although the New York City Police Department (hereinafter NYPD) issues a Patrol Guide containing a standardized, written protocol regarding inventory searches, of which the hearing court ap-

peared to have taken judicial notice, the People did not proffer any description of what the protocol requires, and "offered no evidence that the police officers conducted this search in accordance with the protocol" (*id.*; *compare Florida v Wells*, 495 US at 5 [Brennan, J., concurring] [purported inventory search was unconstitutional since "there was no evidence that the inventory search was done in accordance with any standardized inventory procedure"] *with South Dakota v Opperman*, 428 US at 380 [Powell, J., concurring] [explaining that the majority upheld the search of the unoccupied car impounded for traffic violations because the search "was limited to an inventory of the unoccupied automobile and was conducted strictly in accord with the regulations of the (local) Police Department"]).

Indeed, in the case at bar, there is no dispute, as the Judicial Hearing Officer found, that the People proffered "*no* testimony concerning . . . the [NYPD's] standard procedure . . . with respect to inventory searches" (emphasis added). Notably, Police Officer Michael Thompson, who was one of the officers who conducted the search of the defendant's vehicle, testified on direct examination at the suppression hearing on the issue of the inventory search only that his lieutenant informed him that "the [defendant's] car had to be vouchered" because the defendant was being charged with reckless endangerment, and that "all items from the vehicle had to be removed in order for the car to be sent down to the College Point Auto Pound." I respectfully submit that Officer Thompson's direct testimony was woefully inadequate and did not satisfy the People's burden of proffering "a description of what the [inventory search] procedure requires" (*People v Gomez*, 13 NY3d at 11; *see Colorado v Bertine*, 479 US at 374-375; *People v Johnson*, 1 NY3d at 256; *People v Galak*, 80 NY2d at 716; *People v Elpenord*, 24 AD3d at 467; *People v Russell*, 13 AD3d at 657). Significantly, Officer Thompson's testimony did not demonstrate, as the People are required to show, that he conducted the search to protect the defendant's property, insure against claims of lost, stolen, or vandalized property, or safeguard the police, nor did it demonstrate that he lacked discretion in conducting the search (*see Florida v Wells*, 495 US at 4; *South Dakota v Opperman*, 428 US at 384 [Powell, J., concurring]; *People v Johnson*, 1 NY3d at 256; *People v Galak*, 80 NY2d at 719; *People v Banton*, 28 AD3d at 571-572; *People v Jeffrey*, 18 AD3d 776, 777 [2005]; *People v Russell*, 13 AD3d at 657).

I also note that the fact that Officer Thompson understood that the defendant was being charged with a crime raises the question as to whether the purpose of the search was investiga-

tory or to create an inventory and thereby protect the defendant's property, insure against claims of lost, stolen, or vandalized property, and safeguard the police (*see Colorado v Bertine*, 479 US at 372; *cf. Cady v Dombrowski*, 413 US at 447). Similarly, in the absence of any direct testimony regarding departmental procedures, the People did not establish that Officer Thompson lifted the middle seat of the back row of the defendant's vehicle where the subject evidence was found, pursuant to NYPD procedures or in his own discretion, without regard to NYPD procedures or in contravention thereof (*see Florida v Wells*, 495 US at 4; *South Dakota v Opperman*, 428 US at 384 [Powell, J., concurring]; *People v Galak*, 80 NY2d at 719; *People v Banton*, 28 AD3d at 571-572).

Moreover, although on cross-examination by defense counsel, Officer Thompson testified that he created an inventory list using a "property clerk's invoice" or a "voucher," which I concede is an important factor in determining the validity of a purported inventory search (*see People v Johnson*, 1 NY3d at 256; *People v Cochran*, 22 AD3d 677, 678 [2005]), given the complete absence of any testimony indicating Officer Thompson's familiarity with the NYPD's inventory search protocol or that he conducted the search in accordance with such protocol, the creation of an inventory list cannot cure the constitutional deficiencies (*cf. People v Johnson*, 1 NY3d at 256).

In sum, to find, as the majority does, that the People met their burden of establishing that the purported inventory search was proper based on the bare testimony of Officer Thompson, on direct examination, that his lieutenant told him that "the car had to be vouchered," and instructed him that "all items from the vehicle had to be removed in order for the car to be sent down to the College Point Auto Pound," runs contrary to precedent requiring the People to establish that the police officers conducted the search pursuant to departmental procedures and, thus, justify an otherwise unconstitutional search.

I therefore respectfully dissent.