People v Bacquie (2017 NY Slip Op 06924)





People v Bacquie


2017 NY Slip Op 06924


Decided on October 4, 2017


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 4, 2017
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
L. PRISCILLA HALL
SYLVIA O. HINDS-RADIX
VALERIE BRATHWAITE NELSON, JJ.


2016-08051
 (Ind. No. 896/14)

[*1]The People of the State of New York, respondent,
v
Richard Bacquie, appellant.


Patrick Michael Megaro, Uniondale, NY, for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Nancy Fitzpatrick Talcott, and Jonathan K. Yi of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Griffin, J.), rendered July 20, 2016, convicting him of criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Margulis, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence.
ORDERED that the judgment is modified, on the law, by vacating the convictions of criminal possession of a weapon in the second degree under counts one and two of the indictment and criminal possession of a weapon in the third degree under count three of the indictment, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed, and that branch of the defendant's omnibus motion which was to suppress the gun recovered from the defendant's car is granted.
The police stopped the defendant's car and recovered a knife from his pocket while frisking him after he was removed from the car. Later, during an inventory search of the car, the police recovered a gun from the car. Following a hearing, the Supreme Court denied those branches of the defendant's motion which were to suppress the knife recovered from his person and the gun recovered from his car. The defendant was convicted, upon a jury verdict, of criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree (two counts). He appeals from the judgment of conviction.
In challenging the Supreme Court's denial of those branches of his omnibus motion which were to suppress physical evidence, the defendant contends that the stop of his vehicle was not justified, and that the People did not establish the lawfulness of the search of his vehicle at the suppression hearing.
The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress the knife recovered from his person following the stop of the vehicle that he [*2]was driving. A police officer's observation of what are suspected to be excessively tinted vehicle windows, in violation of Vehicle and Traffic Law § 375(12-a)(b), may justify a stop of that vehicle (see People v Brock, 107 AD3d 1025, 1026-1027; People v Collins, 105 AD3d 1378, 1379; People v Hawkins, 45 AD3d 989, 991; People v McKane, 267 AD2d 253). In this case, New York City Police Department Officer Kenneth Sepulveda, whose testimony regarding the stop was found credible by the court, testified that the window tints on the car that the defendant drove were dark, that it was hard for Officer Sepulveda to see inside the car, that "[a]nything under 70 percent light transmittance is a summonsable offense," that he observed the defendant's car from a distance of "[a] couple of feet," that nothing obstructed his view and there were street lights, that the defendant's car "passed directly passed [sic] me making a left," and that although he did not recall receiving training regarding tinted windows, he had experience in this area, having made thousands of stops and written hundreds of summonses for illegally tinted windows. Thus, contrary to the defendant's contention, and to our dissenting colleague's conclusion, the police lawfully stopped the defendant's car due to an apparent violation of Vehicle and Traffic Law § 375(12-a)(b) (see People v Brock, 107 AD3d at 1026-1027; People v Collins, 105 AD3d at 1379; People v Hawkins, 45 AD3d at 991; People v McKane, 267 AD2d at 253).
However, because the People failed to establish the lawfulness of the inventory search of the defendant's car, the Supreme Court erred in denying that branch of the defendant's omnibus motion which was to suppress the gun recovered from his car. Although the uncovering of incriminating evidence may not be the purpose of an inventory search, incriminating evidence found during a valid inventory search will not be suppressed (see People v Padilla, 21 NY3d 268, 272; People v Johnson, 1 NY3d 252, 256). To further the goals justifying the exception, "an inventory search should be conducted pursuant to an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably'" (People v Johnson, 1 NY3d at 256, quoting People v Galak, 80 NY2d 715, 719; see People v Gomez, 13 NY3d 6, 10). The police procedure must be standardized so as to "limit the discretion of the officer in the field" (People v Galak, 80 NY2d at 719). "Thus, two elements must be examined: first, the relationship between the search procedure adopted and the governmental objectives that justify the intrusion and, second, the adequacy of the controls on the officer's discretion" (id.). In other words, there must be evidence of the policy as to inventory searches and that the particular inventory search at issue complied with that policy, and the court must evaluate the adequacy of the policy itself, to
ensure that it furthers the proper goals of and limits on inventory searches (see People v Gomez, 13 NY3d at 11; People v Galak, 80 NY2d at 719). The written policy itself need not be entered into evidence, but there must be some evidence of what the procedure requires (see People v Gomez, 13 NY3d at 11; People v Taylor, 92 AD3d 961, 962), and the officer's compliance with it (see People v Padilla, 21 NY3d at 272).
Here, no testimony was given at the suppression hearing about the content of any New York City Police Department policy regarding the conduct of inventory searches, or the officer's compliance with it. In the absence of any evidence satisfying the People's burden of establishing the lawfulness of the search of the defendant's automobile, the Supreme Court should have granted that branch of the defendant's motion which sought suppression of the handgun found during that search (see People v Gomez, 13 NY3d at 10-11; People v Russell, 13 AD3d 655, 657).
The defendant's contention that various remarks made by the prosecutor throughout the trial deprived him of a fair trial is only partially preserved for appellate review (see CPL 470.05[2]). In any event, while some of the prosecutor's comments were improper, they did not deprive the defendant of a fair trial (see People v Naqvi, 132 AD3d 779, 781).
Viewing the record as a whole, the defendant was afforded meaningful representation, and thus, was not deprived of the effective assistance of counsel (see Strickland v Washington, 466 US 668; People v Benevento, 91 NY2d 708; People v Baldi, 54 NY2d 137; People v Yi Qiu, 129 AD3d 1111, 1112; People v Fields, 127 AD3d 782, 784).
The defendant's remaining contentions are without merit.
LEVENTHAL, J.P., HINDS-RADIX and BRATHWAITE NELSON, JJ., concur.
HALL, J., concurs in part and dissents in part, and votes to reverse the judgment, on the law, grant those branches of the defendant's omnibus motion which were to suppress the gun and the knife, and dismiss the entire indictment, with the following memorandum:
I agree with my colleagues in the majority that the Supreme Court should have suppressed the gun that was recovered from the defendant's car. However, I would go further and conclude that the court also should have suppressed the gravity knife that was recovered from the defendant's person, as the People failed to establish that the stop of the defendant's vehicle was lawful.
At the suppression hearing, Police Officer Kenneth Sepulveda testified that on July 4, 2013, he was a passenger in an unmarked police vehicle driven by Police Officer Joseph Algerio. At approximately 10:25 p.m., the police vehicle was stopped at a red light facing eastbound on Dunkirk Street toward Murdock Avenue when Officer Sepulveda observed the defendant's vehicle, a gray Infiniti, make a left turn from Murdock Avenue and head westbound on Dunkirk Avenue. According to Officer Sepulveda, the defendant's vehicle had illegal "window tints." Officer Sepulveda explained that "[a]nything under 70 percent light transmittance is a summonsable offense" (see Vehicle & Traffic Law § 375[12-a][b]). When Officer Sepulveda was asked how he knew that
the light transmittance of the defendant's windows was less than 70%, he responded that it "was hard for me to see inside the vehicle." Officer Sepulveda said that he had no training regarding window tinting, but he had experience because he had written "hundreds of tints summonses and stopped thousands of cars with illegal tints."
After the defendant's vehicle passed the police vehicle, Officer Algerio made a U-turn and pulled the defendant's vehicle over. Officer Sepulveda approached the front passenger side of the defendant's vehicle, while Officer Algerio approached the driver's side. Officer Algerio instructed the defendant to put down all of his windows, and the defendant put down his driver's side window. Officer Sepulveda pointed his flashlight into the passenger side window, and through that window was able to observe a dagger stuck in between the passenger seat and the center console, and a baseball bat by the defendant's left foot. Officer Sepulveda could not remember whether the passenger side window was up or down when he looked through it to see the dagger and the bat, but when he was asked how he was able to see inside the vehicle, he said he had a "very, very strong flashlight." The officers then removed the defendant from the vehicle and placed him in handcuffs. While frisking the defendant, the officers recovered an illegal gravity knife in his pocket. The defendant was then placed under arrest, and a gun was later recovered during an inventory search of the defendant's car.
At trial, Officer Algerio testified that he did not have a tint meter with him on patrol on the day of the defendant's arrest, and that the police did not verify the extent of the tint on the defendant's car. At the conclusion of the People's case, the court dismissed the sixth count of the indictment, which charged the defendant with operating a motor vehicle with a tinted window in violation of Vehicle and Traffic Law § 375(12-a)(b), on the ground that the People had failed to make out a prima facie case with respect to that count.
"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Oden, 150 AD3d 1269, 1270 [internal quotation marks omitted]; see People v Berrios, 28 NY2d 361, 367-368). In order to legally stop a motor vehicle, a police officer must have "at least a reasonable suspicion that its occupants had been, are then, or are about to be, engaged in conduct in violation of law" (People v Sobotker, 43 NY2d 559, 563).
I acknowledge that a police officer's observation of the windows of a vehicle may, under certain circumstances, support a reasonable suspicion that the windows were overly tinted in [*3]violation of Vehicle and Traffic Law § 375(12-a)(b) (see People v Estrella, 10 NY3d 945, 946; People v McKane, 267 AD2d 253; People v Edwards, 222 AD2d 603, 604). However, in my view, under the circumstances of this case, Officer Sepulveda's observations were not sufficient to support such a reasonable suspicion. Officer Sepulveda stated that the basis for his suspicion was that it "was hard for me to see inside the vehicle." In my view, the mere fact that it is hard to see inside a vehicle that is moving at night is not sufficient to support a reasonable suspicion that the vehicle's windows had a light transmittance of less than 70% in violation of Vehicle and Traffic Law § 375(12-a)(b).
Accordingly, I submit that both the gravity knife and the gun should have been suppressed as fruit of an illegal stop of the defendant's vehicle. Since, without that evidence, the People would be unable to adduce legally sufficient evidence to prove the defendant's guilt of the crimes charged, I vote to dismiss the entire indictment (see People v Theodore, 114 AD3d 814, 818).
ENTER:
Aprilanne Agostino
Clerk of the Court