**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0377-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYREK R. BURGESS, a/k/a
TYRLL BURGESS,

     Defendant-Appellant.

_____

Submitted December 12, 2018 – Decided March 27, 2019

Before Judges Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-01-0002.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Tyrek R. Burgess appeals from the trial court's denial of his motion to suppress evidence. His sole argument is:

> THE WARRANTLESS SEARCH OF THE TRUNK WAS UNCONSTITUTIONAL BECAUSE THE STATE FAILED IN ITS BURDEN TO ESTABLISH A LEGITIMATE INVENTORY SEARCH UNDER NEW YORK LAW SINCE THE OFFICER'S TESTIMONY CLEARLY INDICATED THAT THE PURPOSE OF THE SEARCH AT THE POLICE PRECINCT WAS TO FIND EVIDENCE OF A CRIME. ADDITIONALLY, THE TRIAL COURT WRONGLY FOUND PROBABLE CAUSE TO SEARCH THE TRUNK BECAUSE NEW YORK LAW RECOGNIZES THAT THE SMELL OF MARIJUANA IN THE PASSENGER COMPARTMENT DOES NOT AUTOMATICALLY PROVIDE PROBABLE CAUSE TO SEARCH THE TRUNK.

Based on our review of the record in light of the applicable law, we affirm the trial court's determination, supported by sufficient credible evidence, that the evidence was properly seized pursuant to an inventory search.

At the suppression hearing, a New York City Police Department (NYPD) officer assigned to the Thirty-third Precinct's Anti-Crime Team testified that defendant was observed making "a sudden move to try and attempt to drive down a one-way street" at 12:45 a.m. in an area of New York City the officer described as "a large narcotic area" for both possession and distribution of drugs. The officer testified defendant "crossed over into the opposite lane, and when he

2

went to go make the turn, he started to make the turn then quickly turned back and then came back into his original lane of travel." The officer, accompanied by a sergeant and another officer with whom he was riding in an unmarked police vehicle, stopped the vehicle that defendant was driving for an unsafe-lane-change traffic violation; he also believed the driver may have been intoxicated.

As the testifying officer approached the vehicle, he, based on his "prior experience with marijuana arrests and training in the [police] academy," immediately smelled the odor of raw marijuana[1] when he approached the passenger's open window. The officer overheard defendant tell the other officers who had approached the driver's side he did not have a driver's license.

The testifying officer then searched the passenger compartment after defendant and the passenger were ordered out of the vehicle. In the center console, he found three pharmacy bottles[2] containing, respectively, "[one] hundred hydromorphone pills, [forty-five] oxymorphone pills and [twenty-

---

[1] The State, in its merits brief, stated the officer "smelled the odor of burnt marijuana." Nothing in the record supports this contention. All other references are to the odor of raw marijuana.

[2] The officer differentiated these containers that "resembled the bottles [seen] in the pharmacy" – that did not have a patient's name on the label – from "the clear orange bottles that are typically given to people that have prescriptions."

A-0377-17T2

eight] oxycodone pills." Although defendant told the officers there was a prescription for the pills in the car, the officers never found one.

Defendant and the passenger were arrested for criminal possession of a controlled substance, placed in different police vehicles and transported to the police precinct. One of the officers drove defendant's car back to a secure lot at the precinct, a practice the testifying officer described as a common NYPD procedure.

One of the officers involved in the stop and arrest conducted what the testifying officer characterized as an inventory search; the testifying officer assisted. He described the process: "basically you go through the vehicle to itemize everything inside of it . . . so people's property doesn't get lost and you can keep track of everything in the vehicle." He said they would voucher any contraband or evidence of a crime found during the inventory.

The inventory search yielded a small amount of marijuana in the back seat and several pharmacy bottles in the trunk. One orange prescription bottle was also found; the officer could not remember where that was located in the vehicle. These were in addition to the three bottles found in the center console. Among the items inventoried were "paraphernalia with residue," Tylenol, naproxen, and

4

amphetamine in the trunk. The narcotics found "were taken into [police] custody and then vouchered as arrest evidence."

Unknown to the NYPD officers at the time of their search, the pharmacy bottles had been taken during a drugstore robbery in New Jersey that resulted in defendant's indictment for first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2) (counts one, two, three and four); fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4) (counts five, six, seven and eight); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count nine); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count 10). Following the trial court's denial of the motion to suppress, defendant pleaded guilty to first-degree armed robbery, N.J.S.A. 2C:15-1(a)(2) (count one).

The trial court, applying New York law,[3] found the motor vehicle stop, removal of the driver and passenger from the vehicle, search of the passenger compartment and impoundment of the vehicle were lawful.[4] The court, finding

---

[3] The parties agreed, in that the NYPD officers had no knowledge of the New Jersey robbery and there was no evidence of any cooperative effort between police in New York and New Jersey, the motion to suppress would be analyzed under New York law. See State v. Mollica, 114 N.J. 329, 347-53 (1989).

[4] Defendant does not challenge these police actions; he challenges only the search of the trunk.

the inventory search "was conducted pursuant to standardized procedure," considered:

> the length of the time between the search and the listing and the property. [The court] looked at whether or not there were detailed and careful records in this matter and [found] that according to [the testifying officer's] testimony that the inventory search was undertaken and that he categorized everything in the vehicle, item by item, and he generated an inventory property sheet.
>
> He described how a contraband was vouchered as evidence of a crime immediately after being inventoried. He also described how each vouchered item was stated on the same date as the inventory.

Defendant argues the State has the burden to establish that the officer's motive in conducting the inventory search was not to discover incriminating evidence, an issue not addressed by the trial court. He contends the police wanted to continue searching the vehicle and removed it to the precinct for that purpose; the search of the trunk was not an inventory search; and, inasmuch as probable cause did not exist to search the trunk, the trial court erred in denying his motion.

Our review of a trial court's decision on a motion to suppress evidence is limited. State v. Vargas, 213 N.J. 301, 326-27 (2013). We are obliged to uphold a motion judge's factual findings that are supported by sufficient credible evidence in the record. State v. Rockford, 213 N.J. 424, 440 (2013); State v.

6

Diaz-Bridges, 208 N.J. 544, 565 (2011). "Those findings warrant particular deference when they are '"substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which the reviewing court cannot enjoy."'" Rockford, 213 N.J. at 440 (alteration in original) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). We "consider whether the motion to suppress was properly decided based on the evidence presented at that time." State v. Jordan, 115 N.J. Super. 73, 76 (App. Div. 1971). We need not, however, give deference to a trial court's interpretation of the law; we review legal issues de novo. Vargas, 213 N.J. at 327.

An inventory search, an exception to the warrant requirement, People v. Galak, 610 N.E.2d 362, 365 (N.Y. 1993), allows police officers to search an automobile "to properly catalogue the contents of the item[s] searched," People v. Johnson, 803 N.E.2d 385, 387 (N.Y. 2003). As here, an inventory search may occur "[f]ollowing a lawful arrest of the driver of an automobile that must then be impounded." Ibid. "The specific objectives of an inventory search, particularly in the context of a vehicle, are to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments." Ibid. (citing Florida v. Wells, 495 U.S. 1, 4 (1990)).

A-0377-17T2

Defendant correctly asserts the principle emphasized by the United States Supreme Court that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Wells, 495 U.S. at 4. To guard against police "rummaging," New York courts have held police agencies should conduct inventory searches pursuant to "an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably." Galak, 610 N.E.2d at 365. These procedures should be standardized so as to limit officers' discretion. Johnson, 803 N.E.2d at 387. The trial court made detailed findings, based on the testimony of the officer which it often noted was credible, that the inventory of defendant's vehicle complied with established procedures.

We also recognize that, under New York law, "[w]hile incriminating evidence may be a consequence of an inventory search, it should not be its purpose." Ibid. But we do not agree that the record supports defendant's contention that the officer's "testimony clearly established that the purpose of the search at the police precinct was to gather incriminating evidence, specifically the marijuana that [he] believed he smelled in the passenger compartment." Defendant cites to one portion of the officer's testimony to buttress his argument:

8

[Assistant Prosecutor]: Now how about any marijuana in the passenger compartment of the vehicle?

[Officer]: On the initial search there was not.

[Assistant Prosecutor]: And what do you mean by initial search?

[Officer]: The initial search was quick. After we found the pills, due to the quantity of the pills, we didn't want to stay there too long, being in some cases that cars are often followed if there's a large amount of narcotics in them, or maybe not necessarily a large amount but an amount that can add up to a large amount of money for them. And those pills, from my experience, go for about $30 a pill. So it's about $5,000 of narcotics.

[Assistant Prosecutor]: Just in what you found in the center console.

[Officer]: Yeah, correct.

[Assistant Prosecutor]: Okay. So can you explain to the court why it wouldn't be prudent to conduct a search at that location?

[Officer]: Just in case there's another vehicle following or something. We weren't sure. We just wanted to, you know, we had what we had and then we were just going to bring it back to the precinct.

Defendant does not cite to other parts of the officer's testimony that clarify the officer did not mean the "initial search" was followed by a pretextual continuation of that search. The officer's first reference to an "initial search" echoed the assistant prosecutor's use of that term in a preceding question, "Was

there any currency located during the initial search of the vehicle?" The officer was simply conveying what was and was not found during the on-scene search. The assistant prosecutor's poor phraseology lent to the contextual confusion – now relied upon by defendant – when she asked the officer "why it wouldn't be prudent to conduct a search at that location?" In reply, the officer did not state reasons for not immediately searching the vehicle. He, instead, reiterated the reasons they did not want to stay on scene: the quantity and value of the drugs they found and the danger that defendant's car, which carried a large cache of drugs, was being followed by an accomplice's car. Contrary to defendant's position that the officer intended to continue the pretextual search of the vehicle, the officer said, "we had what we had and then we were just going to bring it back to the precinct."

The trial court noted the early-morning hour of the stop and found, considering

> the officer's safety that he testified to, that when you have vehicles based on his experience that contain large sums of narcotics or narcotics with a high street value, that there could be someone following that vehicle. So . . . for those reasons, the officer had reason to impound the vehicle and take it back to the station.

Although the court confusingly adopted the assistant prosecutor's line of questioning when it stated, "this [c]ourt certainly is not going to second guess

10

an officer serving an employment as to whether or not it was safe for that officer to remain on the scene and conduct a search on the scene," and interjected that it found probable cause for the search, a close review of the record reveals the court upheld the inventory search fully acknowledging that an inventory search could not be a "ruse" for "rummaging" and its primary purpose could not be the recovery of incriminating evidence.

Only a contorted reading of the officer's testimony supports defendant's argument. Nothing in the officer's testimony indicates that he intended to further search for marijuana at the precinct. As he said, they discovered a large quantity of pills and "had what they had." Inasmuch as the record supports the trial court's denial of defendant's motion to suppress, we affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION