People v Russ
2026 NY Slip Op 03475
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Jamell Russ, Appellant.

Decided and Entered:June 4, 2026
113561
Calendar Date: April 30, 2026
Before: Pritzker, J.P., Ceresia, Fisher, Mcshan And Corcoran, JJ.

Marlene O. Tuczinski, Chatham, for appellant.
Brian P. Conaty, District Attorney, Monticello (Thomas W. Raleigh of counsel), for respondent.

[*1]
Fisher, J.
Appeal from a judgment of the County Court of Sullivan County (James Farrell, J.), rendered May 3, 2022, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree (two counts), criminal possession of a controlled substance in the third degree and endangering the welfare of a child and the traffic infractions of speeding, operating an unregistered motor vehicle and misuse of dealer/transporter plates.
On June 14, 2020, a state trooper observed a vehicle exceeding the posted speed limit and initiated a traffic stop in the Town of Liberty, Sullivan County. While conducting the stop, the trooper learned that the dealer plate on defendant's vehicle had been reported stolen, the vehicle was not registered or insured and that defendant's driver's license was suspended. Defendant was arrested and the vehicle had to be towed because no one could legally drive it. Troopers performing a roadside inventory search of the vehicle discovered a loaded magazine in the center console, Suboxone pills and a round of ammunition in a clothing bag on the back seat, as well as an unloaded handgun and a substance suspected to be heroin hidden inside the steering wheel column by the pedals. A second handgun was later discovered during another search after the vehicle had been towed to the police barracks.
Defendant was charged by felony complaint on the day of his arrest, and subsequently indicted on various offenses relating to the traffic stop. Following unsuccessful motions to dismiss on speedy trial grounds and to suppress the evidence obtained as a result of the vehicle searches, a jury convicted defendant of two counts of criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the third degree, endangering the welfare of a child and three traffic infractions. County Court sentenced defendant, as a second felony offender, to various concurrent terms of incarceration, the greatest of which was a prison term of 15 years, to be followed by five years of postrelease supervision, on the criminal possession of a weapon in the second degree convictions. Defendant appeals.
Turning first to defendant's statutory speedy trial claim, where, as here, a defendant is charged with at least one felony, the People must declare readiness for trial within six months of commencement of the criminal action (see CPL 30.30 [1] [a]). To determine whether the People timely declared their readiness for a felony trial, a court must compute "the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion" (People v Gerhard, 244 AD3d 1313, 1318 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 45 NY3d [*2]936 [2026]). Here, the statutory speedy trial period began to run on June 14, 2020 — the date of the filing of the felony complaint — and expired six months later, on December 14, 2020, for a total of 183 days. However, the People did not declare readiness for trial until 607 days later, on February 10, 2022.FN1 As such, the People were required to demonstrate the specific periods of prereadiness delay that were excludable from the calculation (see People v Branton, 238 AD3d 1429, 1432 [3d Dept 2025]).
Contrary to defendant's contention, the People established several significant delays that County Court properly determined as being excludable. Specifically, the various executive orders occasioned by the COVID-19 pandemic tolled the speedy trial clock from the date of the felony complaints on June 14, 2020 through October 4, 2020, a total of 112 days (see Executive Order [A. Cuomo] No. 202.32 [9 NYCRR 8.202.32]; Executive Order [A. Cuomo] No. 202.60 [9 NYCRR 8.202.60]; Executive Order [A. Cuomo] No. 202.67 [9 NYCRR 8.202.67]). Following defendant's failure to surrender after the arraignment, the days between the issuance of the bench warrant on November 5, 2020 and when defendant was returned to custody on September 3, 2021, a total of 302 days, were excludable (see CPL 30.30 [4] [c] [ii]). Also excludable was the period of motion practice, which encompassed the time from September 9, 2021 through County Court's decision on January 12, 2022, a total of 125 days (see CPL 30.30 [4] [a]; People v Gerhard, 244 AD3d at 1318). When subtracting the sum of these days (539) from the total prereadiness period (607), resulting in a total of 68 days, it is clear that the People did not violate defendant's statutory speedy trial rights (see People v McCarty, 221 AD3d 1360, 1364 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; People v Catalan, 204 AD3d 1240, 1241-1242 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]). Furthermore, as significantly less than six months of chargeable time had elapsed between the commencement of the criminal action and defendant's second motion to dismiss on speedy trial grounds made during the trial on February 23, 2022, we reject defendant's contention that the People's certificate of compliance and readiness declaration were rendered illusory by the subsequent disclosures — which we, nevertheless, find to be reasonable under these unique circumstances and made in good faith (see People v Sheard, 236 AD3d 826, 827 [2d Dept 2025]; see also People v Grandoit, 242 AD3d 1298, 1301 [3d Dept 2025]; People v McCarty, 221 AD3d at 1363).
We do, however, find merit in defendant's contention that County Court erred when it denied his motion to suppress the evidence obtained during the inventory search of defendant's vehicle. "Following a lawful arrest of a driver of a vehicle that is required to be impounded, the police may conduct an inventory search of the vehicle" (People v Douglas, 40 NY3d 385, 388 [2023] [internal quotation marks and citation [*3]omitted]). "An inventory search is exactly what its name suggests, a search designed to properly catalogue the contents of the item searched" (People v Johnson, 1 NY3d 252, 256 [2003]). "An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, and . . . an inventory search will be constitutionally invalid where the search was merely a pretext to search for evidence of a crime" (People v Gray, 234 AD3d 1130, 1131 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]). To guard against this danger, "the inventory search must be both reasonable and conducted pursuant to established police agency procedures that are designed to meet the legitimate objectives of the search while limiting the discretion of the officer in the field" (People v Jones, 185 AD3d 1159, 1160-1161 [3d Dept 2020] [internal quotation marks and citations omitted]). These legitimate objectives "are to protect the property of the defendant, to protect the police against any claim of lost property, and to protect police personnel and others from any dangerous instruments" (People v Gomez, 13 NY3d 6, 10 [2009] [internal quotation marks and citations omitted]). Although there is no requirement for the search protocol to be written, the People bear the burden of establishing the validity of the protocol itself and that the officers conducting the search complied with the established procedure (see People v Douglas, 40 NY3d at 388-389; People v Gray, 234 AD3d at 1131).
At the suppression hearing, the state trooper who discovered the contraband testified that, after defendant was handcuffed and in the patrol car of another trooper, he located the loaded magazine in the center console and then found the Suboxone pills and a single round of ammunition inside of a bag on the back seat. According to the trooper, he began looking under the seats and found nothing, and then searched the compartments near the pedals, when he "saw something red poking through a hole" under the steering wheel column. He testified that he pulled on the fabric, which caused rice and a knotted wrap of fabric containing heroin to fall through the hole. The trooper then reached further into the steering column and located an unloaded handgun. The vehicle was then towed back to the State Police barracks, where a canine unit was utilized to further search the vehicle and a loaded revolver was discovered "higher above" where the other gun had been found inside the steering wheel column. When asked about the inventory search protocol, the trooper testified there was no written procedure to his knowledge but that troopers were trained to perform inventory searches "according to the vehicle and traffic law" — although he admitted that he did not recall the entirety of that training course. He also testified that the decision whether to perform an inventory search was that of the trooper at the scene, and further explained that an inventory search was to [*4]be performed before towing a vehicle to identify valuables in case something was reported stolen or missing upon return to the owner. Similarly, the other state trooper who performed the roadside search and the State Police investigator who advised both troopers to tow the vehicle to the barracks testified that the purpose of an inventory search was to catalogue valuables, perishables or other objects that pose a danger to officers or others before a vehicle is towed. The inventory log generated by the trooper who discovered the contraband was admitted into evidence, which omitted some items that were found in the vehicle — notably the bag containing the Suboxone pills, round of ammunition and clothing. The People did not admit or otherwise present any written search protocol, manual, training materials or other written materials related to inventory or impound search procedures.
Here, although the failure to admit into evidence the relevant tow, impound or inventory search protocols is not automatically fatal, the People's additional failure "to ask any substantive questions of the [state troopers] to establish that the policy was sufficiently standardized, that it was reasonable and that the [state troopers performing the search] followed it in this case" does become fatal (People v Espinoza, 174 AD3d 1062, 1063 [3d Dept 2019]; see People v Gomez, 13 NY3d at 11; People v Colon, 202 AD2d 708, 708 [3d Dept 1994], lv denied 84 NY2d 824 [1994]). Despite the fact that the testimony of the state troopers confirmed their general understanding of the purpose and legitimate objectives served by an inventory search, their testimony also demonstrated a lack of familiarity with any departmental protocol on how to conduct such a search or whether any protocol even existed — must less a procedure that limited their discretion (see People v Galak, 80 NY2d 715, 719-721 [1993]; People v Gray, 234 AD3d at 1135-1136; People v Leonard, 119 AD3d 1237, 1239 [3d Dept 2014]; compare People v Kabia, 197 AD3d 788, 790 [3d Dept 2021], lv denied 37 NY3d 1162 [2022]). Indeed, there was no testimony establishing the circumstances under which troopers could remove paneling or pry into compartments, such as under the steering wheel column or dashboard (see People v Gomez, 13 NY3d at 11; People v Colon, 202 AD2d at 708). Nor was there any testimony regarding when a canine unit could be used to assist with an inventory search — and, even assuming such a protocol did exist, it would remain unclear how a canine unit could satisfy the legislative objectives required by law under the circumstances here, where defendant was in custody and the vehicle had already been towed to the State Police barracks (see United States v Garcia-Robledo, 488 F Supp 2d 50, 71 [D PR 2007]; see also People v Johnson, 1 NY3d at 256; People v Espinoza, 174 AD3d at 1064). While inventory search protocols either allowing or disallowing exploration into the compartment of a steering wheel column or the use [*5]of a canine unit could be "equally permissible," having "no policy whatever" is what causes the subject search to not be "sufficiently regulated to satisfy the Fourth Amendment" (Florida v Wells, 495 US 1, 4-5 [1990]; see People v Galak, 80 NY2d at 721; People v Leonard, 119 AD3d at 1239).
Moreover, the inventory form generated by the search included the loaded revolver that was found at the barracks — although the form indicated that the inventory search had been completed prior to the tow to the barracks. This fact, coupled with the realization that the items listed on the inventory form were almost entirely the hidden contraband — and not the bag on the back seat containing the Suboxone pills and loose bullet, or the other clothing and perishables testified to be in the vehicle — indicates the troopers' search was not designed to produce a usable inventory to guard against claims of lost property or for officer safety, but to list evidence of a crime (see People v Galak, 80 NY2d at 720 [1993]; People v Gray, 234 AD3d at 1136; People v Espinoza, 174 AD3d at 1063-1064). Accordingly, County Court should have granted defendant's motion to suppress the evidence of heroin and the two handguns.
Defendant's contentions that investigators were required to re-Mirandize him, that the jury instruction relating to Miranda was incomplete or wrong, and that County Court erred by allowing the People to recall the investigator to testify about redactions to the audiovisual recording of defendant's statements to investigators, were not raised before the trial court and are therefore unpreserved for our review. We have examined defendant's remaining contentions and have found them to be without merit or academic.
Pritzker, J.P., Ceresia, McShan and Corcoran, JJ., concur.
ORDERED that the judgment is reversed, on the law, motion to suppress granted to the extent of suppressing the heroin and two handguns, and matter remitted to the County Court of Sullivan County for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1
The People declared trial readiness on several occasions, but for our purposes we consider the last date — and therefore the most advantageous date for defendant — which was February 10, 2022.